STATE EDUCATION ASSISTANCE
AUTHORITY, Appellant,

v.

John JOHNSON, et al., Appellees.

Civ. A. No. 84–491–N.

United States District Court,
E.D. Virginia,
Norfolk Division.

Nov. 26, 1984.

George A. Warthen, Richmond, Va., for appellant.

Richard S. Harman, Norfolk, Va., for appellees.

## OPINION AND ORDER

DOUMAR, District Judge.

This matter arises upon the appeal of an order of the U.S. Bankruptcy Court

entered on June 25, 1984 that confirmed the debtors' bankruptcy plan filed pursuant to Chapter 13 of the Bankruptcy Code. The appellant, The State Education Assistance Authority (SEAA) is an agency of the Commonwealth of Virginia. SEAA is an unsecured creditor by virtue of having provided guaranteed student loans to the debtors. SEAA argues that the plan should not have been confirmed because it was not proposed in good faith. This issue was argued at the confirmation hearing before the Bankruptcy Court on June 5, 1984. The Bankruptcy Court overruled SEAA's objection to the confirmation of the plan "as a matter of law." (Tr. 5) The issue before the Court is whether the debtors' Chapter 13 plan was proposed in good faith as required by 11 U.S.C. § 1325(a)(3). The Court finds that the scope of the lower court's inquiry was not sufficient for it to make a determination of whether the plan was proposed in good faith. The Court, therefore, VACATES the order confirming the plan and REMANDS the matter for further proceedings consistent with this opinion.

The facts of the case reveal that on April 11, 1984 the debtors, John and Joan Johnson, filed a voluntary joint bankruptcy petition under Chapter 13. The Chapter 13 statement filed with the petition discloses that the Johnsons are both full-time students. The Johnsons' assets include a 1978 Lincoln Continental Town Car, household goods valued at $615, cash and a bank account totaling $2. All of the above assets are protected under a Homestead Deed. Thus, it would appear that the Johnsons' property is not subject to any judgment liens and the Johnsons seem to be levy proof. The Johnsons' only secured debt is a $2,300 automobile loan which is subject to a lien on the Lincoln Continental valued at $4,225. The remaining debts, all of which are unsecured, amount to $21,052 and encompass 18 creditors. The major creditor is the Virginia Education Loan Authority (VELA)[1] which lent the Johnsons $17,000 in the form of guaranteed student loans. This amount represents 81% of the total alleged unsecured debt.

From the Chapter 13 statement, it would appear that the Johnsons, being full-time students, work neither part-time nor during the summer months. They claim that their sole source of income is Mr. Johnson's Veterans Administration pension which currently pays $757 per month. The Johnsons estimate that their future monthly expenses are $503 leaving a $254 monthly surplus. Under the plan they offer to pay their creditors $129 or 51% of the surplus for 36 months. The plan provides that the secured creditor be paid in full. The plan further provides that the unsecured creditors, including SEAA, will be paid approximately 5 cents on the dollar over a three year period or 1⅔% a year for each of three years.

The Chapter 13 statement also reveals that John Johnson previously petitioned the Bankruptcy Court for relief in 1982. The debtor's confirmation, however, was denied because the Trustee found the plan to be unfeasible. *In re John Johnson*, No. 82–00298–N (Bankr.E.D.Va. May 24, 1982) (See Transcript of May 7, 1982 at 7). In the 1982 proceeding, the amount of money borrowed under the guaranteed student loan program was listed as $4,000.[2] The Johnsons apparently received at least $10,000 in guaranteed student loans for the two year period beginning September 1981.

SEAA filed an objection to the confirmation of the Chapter 13 plan on May 30, 1984. On June 5, 1984, the Bankruptcy Court held a hearing at which time the

---

1. VELA is represented in this action by SEAA. These organizations will be referred to interchangeably.

2. It would appear that some of the debts listed in the 1984 petition were also contained in the 1982 petition. The Court cannot determine, from the record before it, whether any consideration was given to the possibility that some of the debts are unenforceable by virtue of the statute of limitations or otherwise. The Johnsons, in a somewhat related matter, previously brought suit against an organization, they claimed, released false credit information resulting in VELA denying them guaranteed student loans. See *Johnson v. Retail Merchants Association of Norfolk, Virginia, Inc.*, C.A. No. 83–248–N (E.D.Va. *dismissed* August 30, 1983).

Trustee recommended confirmation of the plan. After hearing oral arguments from the parties, the court noted that Chapter 13 contains few exceptions and overruled SEAA's objection "as a matter of law" without making any findings or determinations. The court evidently believed that, since its substantial and meaningful payments test[3] was overruled in *Deans v. O'Donnell, infra,* no findings or determinations need. be made. The court opined that SEAA's only remedy would be for Congress to amend the statute.

As a preliminary matter, the appellant, relying on *1616 Reminc Ltd. Partnership v. Atchison & Keller,* 704 F.2d 1313 (4th Cir.1983), claims that this Court may exercise *de novo* review of the Bankruptcy Judge's findings of fact and conclusions of law. On the other hand, the debtors-appellees claim that the applicable scope of review is the clearly erroneous standard set forth in Bankruptcy Rule 8013. The issue before the Fourth Circuit in *1616 Reminc Ltd.* was the applicable scope of review to be applied by a district court upon a bankruptcy court's adjudication of a state common law breach of contract action before it as a compulsory counterclaim. 704 F.2d at 1314. The court held that the application of the clearly erroneous standard unconstitutionally vested non-Article III bankruptcy referees with excessive judicial power. *Id.* at 1318. Because the issue at bar involves the interpretation of the Bankruptcy Code, the Court will assume, without deciding, that the clearly erroneous standard is the proper standard of review.

Section 1325(a) of the Bankruptcy Code requires a Bankruptcy Court to confirm Chapter 13 plans that satisfy six conditions.[4] The appellant argues that the debtors' plan fails to comply with the third condition which requires the plan to be proposed in good faith. 11 U.S.C. § 1325(a)(3). "Good faith", however, is not defined in either the Bankruptcy Code or its legislative history. 5 Collier on Bankruptcy ¶ 1325.01[2][C] (15th ed. 1983).

The Court of Appeals for the Fourth Circuit had the opportunity to explore the meaning of the good faith requirement of 11 U.S.C. § 1325(a)(3) in *Deans v. O'Donnell,* 692 F.2d 968 (4th Cir.1982). The lower courts, relying upon the good faith requirement of § 1325(a)(3), had refused to confirm Dean's Chapter 13 plan because it failed to provide "substantial and meaningful" repayments to the debtor's unsecured creditors. *See Deans v. O'Donnell,* 14 B.R. 997 (E.D.Va.1981). Vacating the District Court's opinion, the Fourth Circuit rejected the substantial and meaningful test. The Fourth Circuit held that "the plain language of the statute precludes importation of a *per se* rule of substantial repayment into the 'good faith' requirement in every case. Quite simply, had Congress intended that such repayment be

---

**3.** The Bankruptcy Court, in *In re Charnock,* 12 B.R. 691 (Bankr.E.D.Va.1981) held that "[i]n addition to the tests set forth at 11 U.S.C. § 1325(a), the Court is of the opinion that payments to creditors must be substantial and meaningful." *Id.*

**4.** Section 1325(a) provides:
 (a) The Court shall confirm a plan if
 (1) The plan complies with the provisions of this chapter and with other applicable provisions of this title;
 (2) any fee, charge, or amount required under chapter 123 of title 28, or by the plan, to be paid before confirmation has been paid;
 (3) the plan has been proposed in good faith and not by any means forbidden by law;
 (4) the value, as of the effective date of the plan, of property to be distributed under the plan on account of each allowed unsecured claim is not less than the amount that would

be paid on such claim if the estate of the debtor were liquidated under Chapter 7 of this title on such date;
 (5) with respect to each allowed secured claim provided for by the plan
 (A) the holder of such claim has accepted the plan;
 (B)(i) the plan provides that the holder of such claim retain the lien securing such claim; and
 (ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim; or
 (C) the debtor surrenders the property securing such claim to such holder; and
 (6) the debtor will be able to make all payments under the plan and to comply with the plan.
 11 U.S.C. § 1325(a).

a condition precedent to confirmation of all Chapter 13 plans it could have explicitly so stated." 692 F.2d at 970. The Fourth Circuit noted:

> While no precise definition can be sculpted to fit the term "good faith" for every Chapter 13 case, we think the generally accepted definition of "good faith" as used in Chapter 11 of the old Bankruptcy Act, 11 U.S.C. § 766(4) (1976) (repealed), provides the general parameters:
>
> "A comprehensive definition of good faith is not practical. Broadly speaking, the basic inquiry should be whether or not under the circumstances of the case there has been an abuse of the provisions, purpose, or spirit of [the Chapter] in the proposal or plan...."

*Id.* at 972 *quoting* 9 Collier on Bankruptcy ¶ 9.20 at 319 (14th ed. 1978). The Court opined that "[c]ongress never intended ... Chapter 13 to serve as a haven for debtors who wish to receive a discharge of unsecured debts without making an honest effort to pay those debts." 692 F.2d at 972. The Court fashioned a flexible test that considers the totality of circumstances instead of the rigid substantial and meaningful test:

> Without attempting either to be exhaustive or to establish a criteria "checklist," these [applicable] factors might include, depending on the particular case, not only the percentage of proposed repayment, but also the debtor's financial situation, the period of time payment will be made, the debtor's employment history and prospects, the nature and amount of unsecured claims, the debtor's past bankruptcy filings, the debtor's honesty in representing facts, and any unusual or exceptional problems facing the particular debtor. Although the court's discretion in making the good faith determination is necessarily a broad one, the totality of circumstance must be examined on

a case by case basis in order fairly to apply the statute as now written.

*Id.*

The good faith standard adopted by the Fourth Circuit is not unlike the standard adopted by other United States Courts of Appeals. See *Public Finance Corp. v. Freeman,* 712 F.2d 219 (5th Cir.1983); *Flygare v. Boulden,* 709 F.2d 1344 (10th Cir. 1983); *In re Estus,* 695 F.2d 311 (8th Cir. 1982); *In re Goeb,* 675 F.2d 1386 (9th Cir. 1982). In *In re Estus,* the Eighth Circuit includes such factors as: the type of debt sought to be discharged and whether any debt is not dischargeable in Chapter 7, and the motivation and sincerity of the debtor in seeking Chapter 13 relief. 695 F.2d at 317. Bankruptcy Courts applying these standards have found good faith lacking in circumstances similar to the case at bar. See *In re Dalby,* 38 B.R. 107 (Bankr.D. Utah 1984) (where guaranteed student loan comprised 96% of the unsecured debt, court found plan to pay 40% of the debtor's monthly surplus resulting in repayment of 30% of the unsecured debt was not proposed in good faith); *In re Johnson,* 36 B.R. 67 (Bankr.S.D.Ill.1984) (where guaranteed student loan comprised 84% of the unsecured debt, court found plan to pay 100% of debtor's monthly surplus resulting in the repayment of 10% of unsecured debt was not proposed in good faith); *In re Canda,* 33 B.R. 75 (Bankr.D.Or.1983) (where guaranteed student loan comprised 80% of the unsecured debt, court found plan to pay 100% of debtor's monthly surplus resulting in the repayment of 14% of unsecured debt was not proposed in good faith).[5]

The appellant argues that application of the Fourth Circuit's factors to the instant case would result in a finding of bad faith. The appellant specifically argues that the Court should consider the nature and amount of unsecured claims of which 81% are guaranteed student loans. The appellant observed that the plan makes no provi-

---

**5.** The debtors claim that these cases represent the minority view but cannot cite to any published opinions applying the good faith test that

hold otherwise. They claim this is so because the purported majority view is so well settled that there are no cases supporting it. *See* Tr. 5.

sion for any income other than Mr. Johnson's pension. In consideration of the debtor's employment history and prospects, the appellant argues that it is not unrealistic to include income from future earnings. The Johnsons, having received student loans since 1979, should be graduating soon. Their prospects for employment and increased earning potential have been enhanced by their college education which was made possible, in part, by student loans. Furthermore, the Court should consider that the unsecured creditors will be paid only 5 percent of their claims (or 1⅔% of the entire amount for each of three years) and that the debtors' assets and income were both protected from creditors prior to the filing of the bankruptcy petition.[6] The debtors, seemingly ignoring the *Deans* test,[7] believe that if this Court were to rule in favor of the appellant it would be creating a new statutory exception for guaranteed student loans. The debtors point to the fact that although Chapter 7 provides an exception for student loans,[8] Chapter 13 does not, and, therefore, the Court should not create such an exception. The debtors opine that:

> [o]nly by crass and naked overreaching can a court stretch its authority so far as to reach the conclusion that because a Chapter 13 plan includes education loans, ergo it is not filed in good faith. Had Congress intended for education loans to occupy this special place, it could easily have set forth the desired protections as it did in the sections on Chapter 7.

Debtors' Brief at page 6.

The debtors claim further that the size of the debt is not a test of good faith. The debtors believe that, by virtue of being "on the scene", the Bankruptcy Court was able to assess the credibility of the debtors and the nature of the plan and its determination should not be disturbed. *Id.* at 7.

The Court cannot adopt the debtors' position. Section 1325(a)(3) of the Bankruptcy Code requires that a plan be proposed in good faith. Contrary to the debtors' belief, the good faith requirement is as much a part of the Code as any of its other statutory provisions. Although the Fourth Circuit, in *Deans v. O'Donnell, supra,* rejected a *per se* substantial and meaningful test, it did not write the good faith requirement out of the Bankruptcy Code. In addition to considering the percentage of the proposed repayment, the court set forth additional factors which must be considered. This directive is binding on this Court as well as the Bankruptcy Court.

By virtue of the Fourth Circuit's *Deans* test, a bankruptcy court is required to consider the totality of the circumstances in order to make a good faith determination. The first *Deans* factor is the percentage of the proposed repayment. The plan at bar proposes to pay 51% of the alleged monthly surplus resulting in the repayment of 5% of the unsecured debt over a three year period. The court should carefully analyze the debtors' projected monthly revenue and expenditures in order to determine the accuracy of these figures. Inquiry should be made to determine whether the debtors receive any government assistance. For example, the debtors may receive food stamps or Basic Education Opportunity Grants (BEOG). Receipt of such assistance would either lower the percentage of the monthly surplus being paid into

---

**6.** The Johnsons filed a homestead deed protecting their assets and Mr. Johnson's Veterans Administration pension is exempt from creditor claims. 38 U.S.C. § 3101.

**7.** The debtors believe that the good faith inquiry focuses only upon whether the proposed plan is economically viable. They seemingly ignore the Fourth Circuit's test and its requirement that the plan not contravene the spirit or purposes of Chapter 13. *But see In re Burrell,* 25 B.R. 717, 722–723 (N.D.Cal.1982) (Inquiry focuses on whether the plan contravenes the spirit or purposes of Chapter 13.); *Matter of Kull,* 12 B.R.

654, 658 (S.D.Ga.1981) ("If confirmation depended entirely upon arithmetical computations or the absence of illegal activity in the case, there would be no need for the judge.").

**8.** 11 U.S.C. § 523(a)(8) provides that a discharge under Chapter 7 does not discharge a student loan made, insured, or guaranteed by a governmental unit unless (A) such loan first became due before five years before the date of filing of the petition in bankruptcy or (B) excepting such loan for discharge would impose an undue hardship on the debtor and the debtor's dependents.

the plan or enable the debtors to pay more into the plan. This inquiry may also shed light on the debtors' honesty in representing facts, the seventh *Deans* factor.

■ The second *Deans* factor requires the court to consider the debtors' financial situation. In this regard the Court believes that the debtors' motivation and sincerity must be considered.[9] In the instant case, guaranteed student loans comprise 81% of the total unsecured debt. The court should analyze the terms of the student loan involving the events that trigger the maturity of the debt. If the debt is not due and owing it would appear that the debtor presently lacks the need for bankruptcy relief inasmuch as the student loan represents the vast majority of the total debt. In such a case one could draw the inference "that the principal purpose of the filing is to obtain a discharge of the student loan obligation by paying only a small percentage of those debts." See *In re Canda, supra,* at 77. The court should also consider the fact that the debtors are levy proof. Careful analysis may result in a finding that based upon the debtors' financial situation they are not in need of Chapter 13 relief.

■ The third factor requires the court to consider the period of time over which payment will be made. The court must make an inquiry into the debtors' probable income at the time they will be required to make payments into the plan. In the instant case, the debtors' sole source of income is a veteran pension. One can safely assume, however, that after an extensive college career the debtors will be gainfully employed sometime in the near future. Revenues from such employment should be factored into the plan.

Similar to the required analysis under the third factor in this case, the fourth *Deans* factor requires consideration of the debtors' employment history and prospects. Unlike a liquidation under Chapter 7 where creditors look only to existing assets for payment, a Chapter 13 plan enables credi-

tors to be paid out of the debtors' future income. See *In re Kitchens,* 702 F.2d 885, 887 (11th Cir.1983). As previously stated, the plan lists Mr. Johnson's pension as the Johnsons' only source of income. The Johnsons, however, have been receiving guaranteed student loans since 1979 and therefore should be graduating soon. It would appear that their potential for employment has been greatly enhanced by their college education. The court should analyze the Johnsons' college record and, if applicable, factor future employment revenues into the plan.

In considering the nature and amount of the unsecured claims, the *Deans* fifth factor, the court is required to consider the fact that the vast majority of the unsecured debt are guaranteed student loans. Unlike most commercial loans which are granted only upon a showing of creditworthiness and ability to make repayment, guaranteed student loans, on the other hand, are granted only upon a debtor establishing need. Unlike most loans, guaranteed student loans do not require a borrower to commence repayment until the borrower has completed his or her education. It is therefore most questionable when a debtor accepts a student loan and then, prior to its maturity, attempts to extinguish the debt in bankruptcy without ever making an attempt to repay it. It stretches credulity to say that the debtors made an honest effort to pay these debts as required by 11 U.S.C. § 1325(a)(3). See *Deans, supra,* 692 F.2d 972. The Court is sensitive to the possibility that under the debtors' interpretation of the good faith requirement, a student may convert a subsidized loan into an outright grant. The Court, however, is not of the position that merely because a Chapter 13 plan contains a guaranteed student loan it is therefore not filed in good faith. The Court is ruling that the Fourth Circuit's test must be applied and is merely acknowledging that the public policy served by the student loan program requires a further good faith in-

---

**9.** Although other courts list motivation and sincerity separately, see *In re Estus,* 695 F.2d at 317, this Court is of the opinion that it is part of the second factor. In any event, the *Deans*

court noted that its factors are not exhaustive and the Court believes that this inquiry is helpful and comprises part of the totality of the circumstances.

quiry than might otherwise be made. See *Matter of Hawkins*, 33 B.R. 908, 913 (Bankr.S.D.N.Y.1983).

■ The Court is of the opinion that a good faith determination cannot be made in a vacuum. Consideration must be given to the practicalities of the situation. The bankruptcy court should attempt to determine the purpose for the bankruptcy filing. The court must determine whether there has been an abuse of the purpose or spirit of the Bankruptcy Code. Such an inquiry is frequently made in Chapter 13 cases involving matters other than guaranteed student loans. *See, e.g., In re San Miquel*, 40 B.R. 481 (Bankr.D.Colo.1984) (Good faith was lacking where the real purpose of the Chapter 13 plan was to avail the debtors of the opportunity to defer attorney fees.); *In re Sullivan*, 40 B.R. 914 (Bankr. E.D.N.Y.1984) (There was a lack of good faith when a debtor discontinued his business in order to minimize the income available for distribution to creditors under a Chapter 13 plan). Consistent with the above cases, on remand the court may very well find that the real purpose of the Chapter 13 filing was to discharge the debtors' guaranteed student loans. Such a purpose would, at least to this Court, be an abuse of the purpose and spirit of the Bankruptcy Code.

■ The sixth factor requires the court to consider past bankruptcy filings. Mr. Johnson previously filed a bankruptcy petition that was held to be unfeasible. The court must therefore scrutinize the similarities of the two filings including the increases of indebtednesses between the filing dates. This inquiry may be helpful in determining the genuineness of the claims (i.e., whether the statute of limitations bars any alleged debts or indeed whether the debts presently exist) and may shed light upon the seventh *Deans* factor, the debtors' honesty in representing facts. Finally, the court should consider whether there are any unusual or exceptional problems facing the debtors. Inasmuch as Mr. Johnson is receiving veterans benefits, the court may consider any health problems that may inhibit the debtors' ability to comply with the terms of the plan. Furthermore, the court's inquiry is not limited to the factors listed by the Fourth Circuit. The court may also consider other factors it deems necessary.

■ Although any Chapter 13 plan must be proposed in good faith, when a creditor objects to a plan claiming it was not filed in good faith, a court must make a full inquiry and clearly set forth its factual determinations as to the basis for its conclusion of whether the plan was proposed in good faith. Based upon the records and transcripts of the proceedings of the Bankruptcy Court it would appear that the *Deans* good faith factors were not considered. The Bankruptcy Court merely accepted the trustee's recommendation to confirm the plan and ruled that the cases cited by SEAA represented, in its opinion, the minority view. This Court therefore REMANDS this case to the Bankruptcy Court to enable it to make factual findings so that it may properly apply the *Deans* test.

The case is therefore REMANDED for further proceedings consistent with this opinion.

IT IS SO ORDERED.