**In re Laura L. MAKARCHUK, Debtor.**

**Bankruptcy No. 86–00071.**

United States Bankruptcy Court, N.D. New York.

July 20, 1987.

---

Mark A. Wolber, Utica, N.Y., for debtor.

Frederick J. Schreyer, Albany, N.Y., for New York State Higher Educ. Services Corp.

Richard W. Cross, Albany, N.Y., for The State University of New York.

Warren V. Blasland, Syracuse, N.Y., Trustee.

## MEMORANDUM–DECISION, FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER

STEPHEN D. GERLING, Bankruptcy Judge.

The New York State Higher Education Services Corporation ("NYSHESC"), and the State University of New York ("SUNY"), have timely filed objections to confirmation of Laura Makarchuk's ("Debtor") proposed Chapter 13 plan. Both creditors contend the plan has not been proposed in "good faith", and therefore, fails to comply with § 1325(a)(3) of the Bankruptcy Code, 11 U.S.C. §§ 101–1330 ("Code"). The matter was submitted for decision on May 28, 1987.

### FACTS

On January 21, 1986, Debtor filed her voluntary petition for relief under Chapter 7 of the Code. On the same date, she commenced an adversary proceeding against NYSHESC and SUNY, seeking a determination that the student loans received from these agencies were dischargeable due to "hardship", Code § 523(a)(8)(B). At the time of the Chapter 7 filing, the NYSHESC and SUNY obligations were Debtor's only scheduled debts, with SUNY due approximately $501.58 as the result of a National Direct Student Loan, and NYSHESC due approximately $7,600.80 as the result of two Guaranteed Student Loans issued by Norstar Bank, but guaranteed by NYSHESC.[1]

After an evidentiary hearing, the Court issued its decision on December 17, 1986, holding that Debtor had failed to prove that the exception of the two debts from discharge would impose an undue hardship upon her. The Court had reviewed Debtor's circumstances with reference to the three-tiered analysis developed in *Pennsylvania Higher Education Assistance Agency v. Johnson (In re Johnson)*, 5 B.C.D. 532, 544 (Bankr.E.D.Pa.1979). Under the

---

1. Norstar was also named as a defendant in the adversary proceeding, but did not appear or otherwise defend.

*Johnson* analysis, a court addresses economic, good faith, and policy considerations underlying the relatively narrow hardship exception which Code § 523(a)(8)(B) reserves for the dischargeability of otherwise nondischargeable educational loans.[2]

The Court's scrutiny of the evidence presented revealed that while Debtor certainly had yet to secure continued gainful employment, she had failed to prove any unique circumstances or physical disabilities making less likely her ability to meet future student loan commitments. As a result of this decision, Debtor converted her case to one under Chapter 13 pursuant to Code § 706(a) on January 20, 1987.

Debtor subsequently proposed a three-year plan for repayment, with monthly payments of $80.00 [3] to the Trustee. After the Court's earlier decision, the Debtor had apparently secured presumably permanent employment as a receptionist-secretary, resulting in a net take-home pay of $503.00 per month.

NYSHESC and SUNY remain Debtor's only creditors. Both filed objections to Debtor's plan, with NYSHESC contending that Debtor's original proposal of $80.00 per month was approximately $20.00 more than it would have otherwise demanded on a ten-year payout of its debt. SUNY averred that Debtor could repay her loan balance in full by making monthly payments of $7.00 over the approximately seven years remaining on the original repayment schedule. Debtor's proposal to pay $120.00 per month during the life of the plan results in payments to her two unsecured student loan creditors of approximately 48%.

Debtor contends her plan is proposed in good faith, and should be confirmed on the basis of the Court's unreported decisions in *In re Blank*, Case No. 80–00069 (Bankr.N. D.N.Y. Nov. 4, 1980) (Marketos, B.J.).

## ISSUE

Has a debtor complied with Code § 1325(a)(3), when the plan proposes partial payment on debtor's only obligations—two unsecured and otherwise nondischargeable student loan debts?

## CONCLUSIONS OF LAW

This matter is a core proceeding, 28 U.S.C. § 157(b)(2)(6), with the Court having jurisdiction pursuant to 28 U.S.C. § 1334, and 28 U.S.C. § 157(a) and (b)(1).

A Chapter 13 plan must be confirmed when all six conditions of Code § 1325(a) are satisfied. H.R.Rep. No. 595, 95th Cong., 1st Sess. 430 (1977) *reprinted in* 1978 U.S.Code Cong. & Admin.News 5963, 6385; S.Rep. No. 989, 95th Cong., 2d Sess. 142 (1978) *reprinted in* 1978 U.S.Code Cong. & Admin.News 5787, 5928. Present

---

**2.** The *Johnson* analysis begins with the court first addressing the economic concern:

  Will the debtor's future financial resources for the longest foreseeable period of time allowed for repayment of the loan, be sufficient to support the debtor and his dependent at a subsistence or poverty standard of living, as well as to fund repayment of the student loan?

*Id.* at 544.

When an affirmative answer results, a finding of nondischargeability is warranted. If answered negatively, then inquiry turns to the second consideration a two-part good faith analysis:

  (a) Was the debtor negligent or irresponsible in his efforts to minimize expenses, maximize resources, or secure employment?

  (b) If "Yes", then would lack of such negligence or irresponsibility have altered the answer to the [economic] test?

*Id.*

If the first of the good faith questions is answered negatively, then the debtor's obligation should be discharged. If the answer to both questions are affirmative, a rebuttable presumption of nondischargeability is established; this may be overcome by a negative response to the policy consideration:

  Do the circumstances—i.e. the amount and percentage of total indebtedness of the student loan and the employment prospects of the [debtor] indicate:

  (a) That the dominant purpose of the bankruptcy petition was to discharge the student debt, or

  (b) That the debtor has definitely benefited financially from the education which the loan helped to finance.

*Id.*

Where an affirmative response to either consideration is given, the debt should be nondischargeable. Firm negative answers to both justify granting the debtor's relief.

**3.** At the confirmation hearing on April 27, 1987 Debtor indicated monthly payments would be increased to $120.00

concern is with the requirement imposed by subsection (a)(3) thereof that "the plan has been proposed in good faith and not by any means forbidden by law." As of this writing, nine of the thirteen United States Circuit Courts of Appeals have considered what is required of a debtor in a "good faith" proposal of a Chapter 13 plan. *Barnes v. Whelan (In re Barnes)*, 689 F.2d 193 (D.C.Cir.1982); *Johnson v. Vanguard Holding Corp. (In re Johnson)*, 708 F.2d 865 (2d Cir.1983) (per curiam); *Deans v. O'Donnell*, 692 F.2d 968 (4th Cir.1982); *Public Finance Corp. v. Freeman*, 712 F.2d 219 (5th Cir.1983); *Ravenot v. Rimgale (In re Rimgale)*, 669 F.2d 426 (7th Cir.1982); *United States v. Estus (In re Estus)*, 695 F.2d 311 (8th Cir.1982); *Tenney v. Terry (In re Terry)*, 630 F.2d 634 (8th Cir.1980) (per curiam); *Goeb v. Heid (In re Goeb)*, 675 F.2d 1386 (9th Cir.1982); *Flygare v. Boulden*, 709 F.2d 1344 (10th Cir. 1983); *Kitchens v. Georgia Railroad Bank and Trust Co. (In re Kitchens)*, 702 F.2d 885 (11th Cir.1983) (per curiam). With the exception of the Eighth Circuit's decision *In re Terry, supra*, each of the foregoing decisions hold that "good faith" is determined on a case by case basis, with reference to the totality of the circumstances.

In rejecting a *per se* rule of substantial repayment as a necessary precondition to Chapter 13 plan confirmation, the Fourth Circuit made clear that a broad scope of judicial inquiry was warranted in this context:

> Congress never intended, of course, that Chapter 13 serve as a haven for debtors who wish to receive a discharge of unsecured debts without making an honest effort to pay those debts. While no precise definition can be sculpted to fit the term "good faith" for every Chapter 13 case, we think the generally accepted definition of "good faith" as used in Chapter 11 of the old Bankruptcy Act, 11 U.S.C. § 766(4) (1976) (repealed), provides general parameters:

> > A comprehensive definition of good faith is not practical. Broadly speaking, the basic inquiry should be whether or not the circumstances of the case there has been an abuse of the provi-

sions, purpose or spirit of [the Chapter] in the proposal of the plan ... 9 Collier on Bankruptcy 9.10 at 319 (14th ed. 1978) (citations omitted).

> As noted, repayment to unsecured creditors, although not a requirement for confirmation of every Chapter 13 plan, was one intended purpose of Chapter 13's enactment. Failure to provide substantial repayment is certainly evidence that a debtor is attempting to manipulate the statute rather than attempting honestly to repay his debts. But substantiality of proposed repayment is but one factor to be considered in deciding if a plan has been proposed in good faith; a court must make its determination based on all militating factors.

*Deans v. O'Donnell, supra*, 692 F.2d at 972; *See also In re Estus, supra*, 695 F.2d at 316; *In re Rimgale, supra*, 669 F.2d at 431–32; *In re Kitchens, supra*, 702 F.2d at 888; *Flygare v. Boulden, supra*, 709 F.2d at 1347; *In re Goeb, supra*, 675 F.2d at 1390 n. 9.

The Eighth Circuit Court of Appeals enunciated certain non-exclusive "good faith" factors which a bankruptcy court must consider in passing upon Chapter 13 plan confirmation:

1) the amount of the proposed payments and the amount of the debtor's surplus;

2) the debtor's employment history, ability to earn, and liklihood of future increases in income;

3) the probably or expected duration of the plan;

4) the accuracy of the plan's statement of the debts, expenses and percentage repayment of unsecured debt, and whether any inaccuracies are an attempt to mislead the court;

5) the extent of preferential treatment between classes of creditors;

6) the extent to which secured claims are modified;

7) the type of debt sought to be discharged, and whether any such debt is nondischargeable in Chapter 7;

8) the existence of special circumstances such as inordinate medical expenses.

9) the frequency with which the debtor has sought relief under the Bankruptcy Reform Act;

10) the motivation and sincerity of the debtor in seeking Chapter 13 relief; and

11) the burden which the plan's administration would place upon the trustee.

*In re Estus, supra* 695 F.2d at 317. *See also In re Kitchens, supra,* 702 F.2d at 888–9. The Eighth Circuit Court of Appeals had earlier summarized the responsibilities of the bankruptcy court when making its independent determination of good faith:

> The bankruptcy court must utilize its fact-finding expertise and judge each case on its own facts after considering all the circumstances of the case. If, after weighing all the facts and circumstances, the plan is determined to constitute an abuse of the provisions, purpose or spirit of Chapter 13, confirmation must be denied.

*In re Estus, supra,* 695 F.2d at 316. Consequently, that Debtor converted her original Chapter 7 case to the pending Chapter 13 case after the ruling that her student loan debts were nondischargeable, is alone an insufficient basis for a finding of bad faith, as all circumstances of her case must be considered. *Street v. Lawson (In re Street),* 55 B.R. 763, 765 (Bankr. 9th Cir.1985); *In re McMonagle,* 30 B.R. 899 (Bankr.D.N.D.1983).

Similarly, the mere fact that Debtor has proposed a Chapter 13 plan in the hopes of discharging debts otherwise nondischargeable in a Chapter 7 case is also an insufficient ground for denial of confirmation on a lack of "good faith", as she cannot be faulted for taking advantage or making use of the available statutory provisions. *Matter of Lambert,* 10 B.R. 223, 226 (Bankr.E.D.N.Y.1981); *In re McMonagle, supra,* 30 B.R. at 904.

In reviewing Debtor's proposed plan within the scope of the *Estus* considerations, the Court notes her two student loan lenders will receive approximately 48% of the value of their outstanding claims. Her employment history to date has not been the brightest of pictures, yet Debtor's current position adds stability to her anticipated income flow. The Court is pleased to learn that the debilitating medical conditions referenced in Debtor's testimony during the earlier evidentiary hearing on dischargeability have not interfered with her ability to secure or otherwise maintain employment; no new evidence suggesting this will not be the case in the future has been presented. Further, no other special circumstances surrounding Debtor's case are evidenced.

As noted in *Estus,* that a debtor intends to discharge an otherwise nondischargeable student loan obligation is but one confirmation factor to consider. Subsequent decisions have reiterated that this ground alone is in and of itself an insufficient basis for denial of confirmation. *See In re Rushton,* 58 B.R. 36, 38 (Bankr.M.D.Ala.1986); *In re McAloon,* 44 B.R. 831, 835 (B.E.D.Va.1984); *In re Ali,* 33 B.R. 890, 894–95 (Bankr.D.Kan. 1983). Yet, where the Debtor's Chapter 13 plan has as its primary or principal purpose the discharge of otherwise nondischargeable student loan debt, in essence accelerating the obligation via a Chapter 13 plan, confirmation has been uniformly denied. *See, e.g. State Ed. Assistance Authority v. Johnson,* 43 B.R. 1016, 1022 (E.D.Va.1984); *In re Perez,* 20 B.R. 879, 884 (Bankr.E.D.N.Y.1982); *Matter of Gaston,* 25 B.R. 571, 573 (Bankr.S.D.Ohio 1982); *Matter of Murallo,* 4 B.R. 666, 6 B.C.D. 478, 479–80 (Bankr.D.Conn.1980); *Matter of Akin,* 54 B.R. 700, 702 (Bankr.D.Neb.1985); *In re Olp,* 29 B.R. 932, 935 (Bankr.E.D.Wis. 1983); *In re Vance,* 49 B.R. 973, 976 (Bankr.D.Minn.1985) (Health Service Scholarship). Facts to consider in determining whether a debtor's primary purpose behind the proposal of a Chapter 13 plan is the discharge of student loans include:

1) the timing of the bankruptcy filing vis-a-vis repayment commencement under the original terms of the student loan, *In re Sanabria,* 52 B.R. 75, 77 (N.D.Ill.1985);

2) the amount of plan payments in relation to payments required on the student loan,

*In re Perez, supra* 20 B.R. at 883; 3) the monthly amount to be received by an educational loan creditor under the plan as compared to the monthly payment due under the original loan agreement; 4) the debtor's use of the skills acquired during the education funded by the student loans, *In re Williams,* 42 B.R. 474, 476 (Bankr.E.D.Ark.1984); 5) the debtor's efforts to repay the student loan debt outside of bankruptcy, *State Education Assistance Authority v. Johnson, supra,* 43 B.R. at 1021; 6) the amount of total student loan debt vis-a-vis other unsecured debt; 7) whether the proposed student loan debt plan payments are "de minimus"; and 8) other relevant considerations such as a debtor's ability to use the Code for future student loan discharge, *In re Dos Passos,* 45 B.R. 240, 243 (Bankr.D.Mass.1984), or whether the debtor's financial condition evidences a true need for bankruptcy relief. *In re Canda,* 33 B.R. 75, 10 B.C.D. 1361, 1362 (Bankr.D.Ore.1983) (judgment-proof debtor with wages exempt from garnishment).

■ With the exception of Debtor's new employment status, her circumstances have not changed since the Court last reviewed her case. Then, as now, the Court observes that "the nature of Debtor's scheduled obligations, consisting solely of educational loans, reveal the undeniable and dominant purpose of her bankruptcy filing to be the discharge of these debts." Debtor bears the burden of proving that the principal purpose behind her plan is consistent with the spirit and purpose of Chapter 13, and is not primarily for the discharge of the otherwise nondischargeable educational loan debt. *Wright State University v. Novak (In re Novak),* 25 B.R. 459, 460 (Bankr.S.D.Ohio 1982). The two student loans are Debtor's only indebtedness, and proposed monthly payments under the plan are allegedly more than she would be required to pay the creditors under the original loan terms. What assets Debtor owns are exempt from execution, save for her earnings. In light of the above, the Court concludes the Debtor's plan is not proposed in good faith, and consequently confirmation is denied.

Debtor's reliance on the Court's decisions in *In re Blank, supra,* is misplaced. In one proceeding, an objection to confirmation of the debtor's Chapter 13 plan was raised by NYSHESC on the ground that as a scheduled debt was nondischargeable in a Chapter 7, to allow less than full payment would yield less than the creditor would receive under a Chapter 7 liquidation. Code § 1325(a)(4). The Court rejected the premise that Chapter 13 plans must provide for full payment of any and all Code § 523(a) nondischargeable debts, ruling that a plain reading of Code § 1325(a)(4) refers to a comparison of the payments to be received under the plan, to what would be "paid" the creditor as its distributive share in a hypothetical Chapter 7. The issue of whether the plan had been proposed in good faith was not addressed, as it had not been raised. In a companion proceeding, the Court dismissed a creditor's adversary complaint objecting to dischargeability based upon Code § 523(a)(2)(B), on the grounds that this basis for nondischargeability of a debt under Chapter 7 was generally irrelevant in a Chapter 13 context. Again, the debtor's good or bad faith was not put in issue.

By reason of the foregoing, it is, therefore

ORDERED:

1. Confirmation of Debtor's Chapter 13 plan is denied as it does not comply with Code § 1325(a)(3).