**In the Matter of David Meryl BELT, III, Debtor.**

**Bankruptcy No. 88–31953.**

United States Bankruptcy Court,
N.D. Indiana,
South Bend Division.

Aug. 28, 1989.

See also, Bkrtcy., 97 B.R. 962.

Estate of Richard Kuchik by Jeffery Johnson, South Bend, Ind., for creditor.

David Meryl Belt, III by Steven L. Hostetler, Mishawaka, Ind., for debtor.

## MEMORANDUM OF DECISION

HARRY C. DEES, Jr., Bankruptcy Judge.

This matter is before the court on the Estate of Richard A. Kuchik's ("Creditor") MOTION TO DISMISS BANKRUPTCY OF DAVID MERYL BELT, III, filed on December 20, 1988, and the Creditor's OBJECTION TO DEBTOR'S PLAN filed October 20, 1988. The Creditor contends that the debtor's petition and plan were not filed in good faith based on the debtor's pre-petition conduct and the circumstances surrounding the Creditor's unliquidated tort claim. The Creditor further contends that the debtor's plan does not meet the disposable income test set out in 11 U.S.C. § 1325(b)(1)(B). An evidentiary hearing was held on June 6, 1989, and the court received post-trial briefs from both parties. In reliance upon the record before the court, the applicable case and statutory authority, and for the reasons set out below the court DENIES the Creditor's motion to dismiss and SUSTAINS the Creditor's objection to confirmation.

### Background

In the joint PRETRIAL ORDER filed May 22, 1989, the parties set out the following Admissions and Factual Stipulations, numbered 1–12:

1. On November 21, 1985, at approximately 9:53 p.m., the debtor negligently and recklessly operated a 1977 Ford Granada westbound on Northside Boulevard in St. Joseph County, Indiana.

2. As a direct result of the debtor's negligent and reckless operation of the 1977 Granada, he was the sole cause of a collision with a 1978 Datsun being driven eastbound on Northside Boulevard by Richard A. Kuchik.

3. In addition to Richard A. Kuchik, his wife, Tamera Kuchik, and their eight-month-old daughter, Christine Kuchik, were passengers in the 1978 Datsun at the time it was struck head-on by the vehicle operated by the debtor.

4. As a direct result of this collision caused solely by the negligence and gross recklessness and gross conduct of the debtor, Richard A. Kuchik suffered severe and fatal injuries, including massive brain damage and a depressed skull fracture from which he died while still at the scene of the accident.

5. At the time Richard A. Kuchik was killed, he was 21 years of age.

6. The collision resulting in the death of Richard A. Kuchik was caused by the carelessness, negligence, and gross recklessness of the debtor in that:

 a. Debtor failed to maintain control over his vehicle, failed to drive at a reasonable and proper speed, and was driving in excess of the posted speed limit in violation of I.C. 9–4–1–57;

 b. Debtor was driving without his headlights on when it was dark in violation of I.C. 9–8–6–3;

 c. Debtor was driving left of the centerline in violation of I.C. 9–4–1–69;

 d. Debtor was driving while under the influence of intoxicating liquor in violation of I.C. 9–11–1–1, *et seq.;* and,

 e. Debtor was operating the motor vehicle on the public streets without insurance coverage in violation of I.C. 9–1–4–3.5.

7. On July 30, 1986, debtor was convicted of "Driving While Intoxicated resulting in death," which is a Class C felony.

8. The operation of the 1977 Granada by the debtor while intoxicated was the sole cause of his crossing the centerline and striking the vehicle driven by Richard A. Kuchik and killing him as a result of said collision.

9. The debtor is a full-time student at Indiana University at South Bend and

is a participant in the federal government student loan program.

10. The debtor is a part-time employee of Indiana University at South Bend.

11. The plan proposed by the debtor is a 36–month plan.

12. Either the estate of Richard A. Kuchik or his widow, Tamera Kuchik, received $56,708.09 from Allstate Insurance Company pursuant to the uninsured motorist provision of her insurance policy.

As the result of pre-trial motion practice, the court, by an order dated June 2, 1989, granted the debtor's motion for a protective order. The effect of the order was to preclude testimony from Thomas D. Blackburn, Esq., the attorney for the Creditor in the state court tort litigation, concerning the statements and conduct of the debtor during settlement negotiations, pursuant to Federal Rule of Evidence 408.

The debtor admitted that he filed his chapter 13 petition on October 27, 1988, four days before the state court trial.

The Creditor contends that neither the debtor's chapter 13 plan nor his bankruptcy petition was filed in good faith. In support of its claim the Creditor points to the following allegations:

—The claim would have been nondischargeable in chapter 7;

—The claim is in excess of the statutory limits of chapter 13;

—The debtor is not using all of his disposable income to fund the chapter 13 plan;

—The debtor's petition was filed four days before the state court trial was to begin;

—The debtor's conduct and actions at the time of the accident giving rise to the Creditor's claim amount to bad faith;

—The debtor's plan is to extend only 36 months, a period shorter than the maximum allowed under the Code;

—The attorney for the debtor is receiving $2,000.00 in fees and the creditors will share a total of $2,990.00;

—The debtor admitted that the sole reason he filed his bankruptcy petition was to discharge the Creditor's claim;

—The debtor has not proposed meaningful payments to the Creditor;

—The debtor failed to make any payments to the Creditor before the bankruptcy petition was filed and is therefore in violation of his probation;

—The debtor's bankruptcy is a veiled chapter 7; and,

—The Creditor's claim is disproportionate in ratio to the other unsecured debts.

The standing chapter 13 trustee testified that in his opinion, the debtor had proposed his plan in good faith.

In support of his good faith in filing his petition and proposing his plan the debtor contended that the bad faith analysis is to work against a debtor in extreme cases, such as when a debtor makes repetitive filings to avoid legal action solely to delay legitimate claims or uses the bankruptcy system to keep fraudulently won gains, both of which amount to abuse of the purpose of the Bankruptcy Code. Even if a debtor's conduct were reprehensible, the debtor contends that only in cases of abuse should the court find bad faith. The debtor submits that because the Creditor's claim was not the result of a judgment or a consent decree, it therefore is not automatically nondischargeable in a chapter 7 case.

The debtor contends that he desires to reorganize his finances and pay what he can to his creditors. He claims that his criminal conviction was the result of reckless, rather than intentional, conduct and that he is not a criminal at heart. The debtor admits responsibility for the accident and explains that his perceived lack of remorse stems from the fact that he has mentally blocked out the accident. The debtor requests that the court distinguish those cases finding bad faith based on crimes which resulted from intent and deceit from those situations which arise from reckless or negligent conduct such as the case at bar. The debtor argues that the Creditor wants nothing less than the debtor's "endless financial servitude."

The debtor explains that his failure to pay any funds to the Creditor is not a violation of his probation or the criminal sanctions imposed upon him by the state court because the state court intentionally made those terms narrow enough to guarantee that some form of restitution would be paid, but broad enough so as not to violate any of his legal rights in state court civil proceedings.

The debtor asserts that his intention in filing his chapter 13 petition was not "solely" to discharge the Creditor's claim, as he has other unsecured debts in addition to the claim of the Creditor which will be addressed in his chapter 13 plan. He argues that he is not attempting to avoid claims by resorting to a chapter 7 liquidation and discharge where creditors could receive nothing, but instead is proposing a plan to pay all of his disposable income for three years to satisfy his creditors' claims.

It is the debtor's position that the term "disposable income" does not include the income of his wife. He points out that in his "honesty" with the bankruptcy court concerning his financial circumstances, he reported his wife's income but acknowledged that he did not list her individual debts.

The debtor argues that the Creditor's motivation for its position that the petition and plan were filed in bad faith results from its belief that the payments under the plan are inadequate. The debtor asserts that it would be patently unjust for the court to dismiss the debtor's petition without allowing him to amend the plan because the debtor's counsel drafted the plan. The debtor has indicated that if so ordered or directed by the court, he would extend the life of his plan and/or increase the monthly payments thereunder.

In support of his good faith, the debtor points to the following facts:

—His statements and schedules were filled out accurately and honestly including disclosure of his wife's income;
—He has timely complied with all required actions;
—His plan payments are current and implemented by wage assignment;
—He has not objected to the Creditor's multi-million dollar claim which he believes clearly is excessive, so that the Creditor will receive as much as possible under the plan;
—He is willing to extend the life of the plan;
—He has agreed to report any increase in his income so that the plan payments can be increased; and
—He has made no attempt to misrepresent the facts.

The debtor explains that he did not act with fraud or bad faith in filing his bankruptcy petition so near the state court trial because the timing was attributable to his difficulty in securing funds with which to file the bankruptcy petition rather than any other reason. He stated that the petition could have been filed at any time and it was not his intent to file at the last minute. He did so on the advice of counsel.

The debtor takes issue with the Creditor's contention that its claim would be nondischargeable under chapter 7. The debtor contends that the 11 U.S.C. § 523(a) exceptions to discharge, which could render the Creditor's claim nondischargeable in chapter 7, are conspicuously absent from the exceptions to discharge set out in § 1328(a). The debtor argues that absence of such exceptions to discharge is indicative of Congress' intent to allow the Creditor's claim against the debtor to be included as part of a plan of reorganization.

Finally, the debtor stresses that the amount paid under the plan should not be critical to the court's analysis; but rather, the court must address whether the repayment satisfies the purposes of chapter 13 and demonstrates the sincere intentions and available resources of the debtor.

### Jurisdiction

The matters before the court concern the Creditor's motion to dismiss and objection to confirmation and as such are core proceedings within the meaning of 28 U.S.C. § 157(b)(2)(A) and (L). Pursuant to 28 U.S.C. § 157(a) and General Rule 45 of the Rules of the United States District

Court for the Northern District of Indiana, this case has been referred to the undersigned bankruptcy judge for hearing and determination.

The Creditor, however, has questioned the court's jurisdiction over the debtor. The Creditor asserts that David Belt ("Belt") may not be a debtor under chapter 13 because his unsecured debts exceed the jurisdictional limits set out in the Bankruptcy Code. The Creditor urges the court to find that it is without jurisdiction and summarily dismiss the case. The court refuses to do so for the reasons which follow.

The statutory provision defining who may be a debtor states:

> (e) Only an individual with regular income that owes, on the date of the filing of the petition, noncontingent, liquidated, unsecured debts of less than $100,000 and noncontingent, liquidated, secured debts of less than $350,000, or an individual with regular income and such individual's spouse, except a stockbroker or a commodity broker, that owe, on the date of the filing of the petition, noncontingent, liquidated, unsecured debts that aggregate less than $100,000 and noncontingent, liquidated, secured debts of less than $350,000 may be a debtor under chapter 13 of this title.

11 U.S.C. § 109(e) (1989).

The Creditor acknowledges that typically, a liability arising from the commission of a tort is contingent because it is never known if the tortfeasor will be held liable until judgment is rendered by a court. *Craig Corp. v. Albano (In re Albano)*, 55 B.R. 363, 367 (N.D.Ill.1985). So, until adjudication of the tortfeasor's liability, any claim would be contingent and, likewise, the amount of the recovery would be speculative. However, the Creditor argues that to the extent that the debtor has acknowledged in his schedules or admitted in his testimony that the value of the Creditor's claim is in excess of $100,000.00, the court should deem at least that much of the claim as liquidated and in excess of the jurisdictional debt limit set out in § 109(e).

"Contingent" debts have been defined as "those claims which depend either as to

their existence or their amount on some future event which may not occur at all or may not occur until some uncertain time." *Albano*, 55 B.R. at 366 (quoting *In re Blehm*, 33 B.R. 678, 679 (Bankr.D.Colo. 1983)). "A claim is contingent as to liability if the debtor's legal duty to pay does not come into existence until triggered by the occurrence of a future event." *In re Williams*, 51 B.R. 249, 250 (Bankr.S.D.Ind. 1984) (quoting *In re All Media Properties, Inc.*, 5 B.R. 126, 133 (Bankr.S.D.Tex.1980), *aff'd*, 646 F.2d 193 (1981)). The triggering event should be one reasonably contemplated by the debtor and the creditor at the time the event occurred giving rise to the claim. *All Media*, 5 B.R. at 133. Thus, under a guarantor/guarantee relationship liability would be contemplated if and when the principal defaulted. "In the case of a tort claim for negligence, the parties at the time of the alleged negligent act would be presumed to have contemplated that the alleged tortfeasor would be liable only if it were so established by a competent tribunal." *Id.*

Here, the debtor's criminal liability stemming from the accident was established by the St. Joseph Superior Court, St. Joseph County, Indiana. That court, though, did not impose a fine and explained that it declined to do so in order that the debtor would have funds available to assist the victim's family. Some time after the conclusion of the criminal proceedings the Creditor filed a state court civil action against the debtor but the intervening bankruptcy filing stayed the civil action and no money judgment was entered. The court thus must determine if any portion of the Creditor's claim is "liquidated." 11 U.S.C. § 109(e) (1989).

■ "Liquidation" is the result of a finding that the *amount* of a claim can be easily determined. *In re Blehm*, 33 B.R. 678, 679 (Bankr.D.Colo.1983). It refers to certainty as to the money value of a claim. *In re Pulliam*, 90 B.R. 241, 246 (Bankr.N. D.Texas 1988); *Albano*, 55 B.R. at 367. Courts generally recognize that debts based on tort and *quantum meruit* claims are unliquidated until resolved by judg-

ment decree or otherwise because the claimant's damages are not fixed. *Pulliam*, 90 B.R. at 246; *In re Furey*, 31 B.R. 495, 497 (Bankr.E.D.Pa.1983); *Denham v. Shellman Grain Elevator, Inc.*, 444 F.2d 1376, 1380 (5th Cir.1971). The "liquidated" nature of the claim turns on whether the claim is subject to "... ready determination and precision in computation of the amount due." *Fostvedt v. Dow (In re Fostvedt)*, 823 F.2d 305, 306 (9th Cir.1987) (quoting *In re Bay Point Corp.*, 1 BCD 1635 (Bankr.D.N.J.1975)).

The court concludes that for the purposes of determining whether the debtor can be a debtor in chapter 13, the Creditor's claim is contingent as to the liability of the debtor because no legal duty to pay has been established against the debtor. The court has not been asked to find, nor would it be proper for the court to impute, that the debtor's criminal liability is tantamount to his civil liability. The debtor's criminal adjudication does not rise to the level of a "legal duty to pay." As to whether the Creditor's claim is liquidated, the court finds that the money value of the claim is uncertain and can not be easily determined. This determination is within the province of the parties by consent or a court of law.

The Creditor acknowledges these principles, but nevertheless proffers the case of *In re Troyer*, 24 B.R. 727 (Bankr.N.D.Ohio 1982), in support of the proposition that a debtor by his own admission, could render himself ineligible for chapter 13 under § 109(e). In that case, Troyer was a commodity broker who admitted that he converted at least $250,000.00 of the funds invested with him. The court found that the debtor's "admission" changed the claims of his investors to contingent and liquidated, at least to the extent of $250,000.00, thus making his unsecured debts exceed the limits for a chapter 13 debtor. *Troyer*, 24 B.R. at 730. While the concept is relative, it may be distinguished factually from this matter.

In *Troyer*, the debtor was able to state with mathematical certainty that he had converted at least $250,000.00 in client funds. In this case, the debtor has admitted liability for the accident. He is not able, however, to make a mathematical computation that would value the Creditor's claim at any particular amount although he believes the value of the Creditor's claim most likely exceeds $100,000.00. The debtor established no foundation to support his opinion of the value of the claim and did not testify as an expert witness. While for whatever reason the debtor may believe that Creditor's claim is so valued, his valuation is not the result of an easy determination and precise computation or based on any mathematical certainty, as was the conversion in *Troyer*.

The relevance of the $100,000.00 figure seems to be linked to the jurisdictional limit set out in § 109(e). While the court does not question the Creditor's right to place a value on its claim, neither this court, the creditor, nor the debtor can state with mathematical certainty that the Creditor's claim is liquidated in the amount of $100,000.00 or more for purposes of the jurisdictional limitations set forth in § 109(e). The court accordingly finds that for the purposes of § 109(e), on the date of the filing of the petition, the debtor's noncontingent, liquidated unsecured debts were less than $100,000.00. Therefore, the debtor is eligible to be a debtor in chapter 13 and this court has jurisdiction.

After reviewing the record, the court makes the following entry. This entry shall serve as findings of fact and conclusions of law as required by Federal Rule of Civil Procedure 52 made applicable to bankruptcy proceedings by Bankruptcy Rules 7052 and 9014.

### Discussion

Both matters before the court turn on the question of good faith. The issue then is whether the facts of this case require denial of confirmation of the debtor's chapter 13 plan and/or dismissal of the bankruptcy petition because of the debtor's lack of good faith in proposing the plan and filing his petition.

The authority for denial of confirmation [1] by the bankruptcy court can be found in 11 U.S.C. § 1325(a)(3) dealing with confirmation of the plan which states in pertinent part:

(a) Except as provided in subsection (b), the court shall confirm a plan if—

\* \* \* \* \* \*

(3) the plan has been proposed in good faith and not by any means forbidden by law.

11 U.S.C. § 1325(a)(3) (1989). No comparable statutory authority, however, requires good faith in the filing of the petition. *In re Smith*, 848 F.2d 813 (7th Cir.1988). In order to support its interpretation that good faith in filing the petition also is required, the *Smith* court looked to *In re Madison Hotel Associates*, 749 F.2d 410, 425 (7th Cir.1984), and to § 1307,[2] stating "[t]hus, under § 1307's express language, a petition is to be rejected for the same reasons that a plan would not be confirmed,

including a lack of good faith." *Smith*, 848 F.2d at 816 n. 3.

The legislative history explains that "[t]he purpose of chapter 13 is to enable an individual, under court supervision and protection, to develop and perform under a plan for the repayment of his debts over an extended period." H.R. Report No. 595, 95th Cong., 1st Sess. 118 (1977), *reprinted in* 1978 U.S.Code Cong. & Admin.News 5787, 5963, 6079. The theory is to provide the debtor with effective relief and a fresh start. H.R. Report No. 595 at 118, *reprinted in* 1978 U.S.Code Cong. & Admin. News at 6078–79. Via chapter 13 of the Bankruptcy Code, Congress provided debtors with additional incentives to encourage them to reorganize under chapter 13 rather than pursue liquidation under chapter 7.

One of the major advantages of chapter 13 is the super-discharge provision.[3] 11 U.S.C. § 1328(a) (1989). *Fidelity & Casu-*

---

**1.** In the case of *In re Smith*, 848 F.2d 813 (7th Cir.1988), the appeals court reaffirmed and distinguished its interpretation that good faith is required in filing the petition as well as proposing the plan wherein it stated:

> The bankruptcy court and district court here, like this court in *In re Madison Hotel Associates*, 749 F.2d 410, 424–25 (7th Cir.1984), distinguished between good faith in filing the petition and good faith in proposing the plan. *Madison Hotel* is a chapter 11 reorganization case in which the debtor's good faith was challenged at the time it filed its petition, before it had proposed a plan. The bankruptcy court considered the debtor's prefiling conduct when it made its "good faith" inquiry in deciding whether to dismiss the petition (as opposed to whether to confirm the plan). The bankruptcy court expressly found no lack of good faith in the initial filing. The bankruptcy court subsequently looked at other factors relevant to good faith in confirming the plan.
> A debtor's "pre-petition" and "pre-plan" conduct could theoretically satisfy the same good faith test. The problem here is that, in contrast to *Madison Hotel*, the bankruptcy court did not make an adequate finding of good faith at either the petition or the plan stage.
> \* \* \* \* \* \*
> In the case cited by the district court for a distinction between plans and petitions, *In re Kopfstein*, 35 B.R. 656 (Bankr.N.D.Oh.1983), the bankruptcy court applied the same standards on motion to dismiss the petition, those of *Memphis Bank v. Whitman*, 692 F.2d 427

(6th Cir.1982), that it would have applied to an opposition to confirmation of the plan. *See also In re Easley*, 72 B.R. 948, 953 n. 5 (Bankr.M.D.Tenn.1987).
848 F.2d at 816 n. 3.

**2.** Eleven U.S.C. § 1307 states in pertinent part:
(c) Except as provided in subsection (e) of this section, on request of a party in interest or the United States Trustee and after notice and a hearing, the court may convert a case under this chapter to a case under chapter 7 of this title, or may dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause, including—
\* \* \* \* \* \*
(5) denial of confirmation of a plan under section 1325 of this title and denial of a request made for additional time for filing another plan or a modification of a plan.
11 U.S.C. § 1307(c)(5) (1989).

**3.** That provision states:
(a) As soon as practicable after completion by the debtor of all payments under the plan, unless the court approves a written waiver of discharge executed by the debtor after the order for relief under this chapter, the court shall grant the debtor a discharge of all debts provided for by the plan or disallowed under section 502 of this title, except any debt—
 (1) provided for under section 1322(b)(5) of this title; or
 (2) of the kind specified in section 523(a)(5) of this title.
11 U.S.C. § 1328(a)(1) and (2) (1989).

*alty Company of New York v. Warren (In re Warren)*, 89 B.R. 87, 95–99 (Bankr. 9th Cir.1988). The effect is that of the 11 U.S.C. § 523(a) exceptions to discharge, only those debts for child support/alimony/maintenance, 11 U.S.C. § 523(a)(5), and Health Education Assistance Loans, 42 U.S.C. § 294f(g), are nondischargeable in a fully performed chapter 13 plan.[4] As a result, even debts based on fraud, misrepresentation, intentional torts, driving under the influence of alcohol, and student loans theoretically could be discharged in a chapter 13 proceeding if the debtor has complied with the applicable provisions of the chapter and title. 11 U.S.C. § 1325(a)(1) (1989). The language of § 1325 is clear and unambiguous and states that "... the court shall confirm a [chapter 13] plan if ..." certain requirements are met. *Id.*

The Creditor argues that the debtor's plan cannot be confirmed for two reasons: first, the debtor failed to apply all of his disposable income to the plan; and second, the debtor's plan was not filed in good faith. In addition, as set out in *Smith*, the Creditor argues that the debtor's petition was not filed in good faith and therefore should be dismissed. The court will address the disposable income issue first and then will analyze the good faith issue as it applies to both confirmation of the debtor's plan and possible dismissal of his petition.

### 1. *Disposable Income Analysis*

■ Pursuant to the provisions of chapter 13, the court may not approve the plan where an unsecured creditor has objected unless, as of the effective date of the plan:

(A) the value of the property to be distributed under the plan on account of such claim is not less than the amount of such claim; or

(B) the plan provides that all of the debtor's projected disposable income to be received in the three-year period beginning on the date that the first payment is due under the plan will be applied to make payments under the plan.

11 U.S.C. § 1325(b)(1)(A) and (B) (1989). "Disposable income" is defined by the Code as "... income which is received by the debtor and which is not reasonably necessary to be expended"—

(A) for the maintenance or support of the debtor or a dependent of the debtor; and

(B) if the debtor is engaged in business, for the payment of expenditures necessary for the continuation, preservation, and operation of such business.

11 U.S.C. § 1325(b)(2)(A) and (B) (1989).

The Creditor contends that as a result of its objection to confirmation of the debtor's plan, the court may not approve the plan unless it "... provides that *all* of the debtor's projected disposable income ... will be applied to make payments under the plan." 11 U.S.C. § 1325(b)(1)(B) (1989) (emphasis added). The Creditor argues that "disposable income" includes income generated both by the debtor and his non-debtor spouse. On the other hand, the debtor adheres to a literal interpretation of that term as defined by § 1325(b)(2)(A) and (B) and thus asserts that the Bankruptcy Code refers only to income "... received by the debtor...."

No statutory authority requires the bankruptcy court to consider the income of a non-debtor spouse in computing disposable income, but courts have held that an accurate application of chapter 13's disposable income test (11 U.S.C. § 1328(b)) is not possible without including in the debtor's budget income from all sources including a non-debtor spouse. *In re Strong*, 84 B.R. 541, 543 (Bankr.N.D.Ind.1988); *In re Saunders*, 60 B.R. 187, 188 (Bankr.N.D. Ohio 1986); *see also In re Kern*, 40 B.R. 26, 28–29 (Bankr.S.D.N.Y.1984) (debtor proposed to pay all expenses for himself and his non-debtor wife even though she could bear her share and he supported his budget with the assertion that his wife would divorce him if she were asked to contribute to her own support; held, creditor's objection sustained because to confirm the plan

---

**4.** *But see* 11 U.S.C. § 1322(b)(5), which refers to curing defaults and is not applicable to these facts.

excluding all of the wife's income would force the debtor's creditors to subsidize part of the wife's living expenses and the Code contemplated no such result); *In re Sellers,* 33 B.R. 854, 857 (Bankr.D.Colo. 1983) (debtor's attempts to exclude the non-debtor wife's income from his budget because they "... were about to separate ...," with no divorce on file, was insufficient to exclude the wife's income from the calculation of the debtor's disposable income); *Georgia Railroad Bank & Trust Company v. Kull (In re Kull),* 12 B.R. 654, 659 (S.D.Ga.1981), *aff'd Kitchen v. Georgia Railroad Bank & Trust Co. (In re Kitchen),* 702 F.2d 885 (11th Cir.1983) (court held that in applying good faith analysis, income of the debtor and the debtor's spouse must be considered).

In a similar vein, bankruptcy courts have considered the non-debtor spouse's income when determining whether a debtor's student loan should be discharged due to undue hardship. *Connecticut Student Loan Foundation, Inc. v. Bagley (In re Bagley),* 4 B.R. 248, 249 (Bankr D.Ariz.1980); *Lezer v. New York State Higher Education Services Corp. (In re Lezer),* 21 B.R. 783, 789 (Bankr.N.D.N.Y.1982). Additionally, inclusion of household income from all sources is used during the course of a substantial abuse inquiry. 11 U.S.C. § 707(b) (1989); *Strong,* 84 B.R. at 543; *In re Bryant,* 47 B.R. 21, 24–26 (Bankr.W.D.N.C.1984).

■ Congress drafted chapter 13 relief to afford the debtor greater flexibility by eliminating the old Chapter XIII requirement of consent to the plan by the unsecured creditors. H.R.Rep. No. 595, 95th Cong., 1st Sess. 117 (1977) *reprinted in* 1978 U.S.Code Cong. & Admin.News 5787. However, in its quest for greater flexibility to the debtor and limitation of the powers of the creditors, "... Congress did not leave the debtor bridled only by his imagination." *In re Cook,* 3 B.R. 480, 485 (Bankr.S.D.W.V.1980). The Code requires a meaningful and realistic budget accompanied by devotion of most of the debtor's surplus income to repay creditors. *Id.*

■ This is not to say, however, that the debtor must devote every penny of the disposable income to the plan in order to comply with § 1325(b)(1)(B). A reasonable reserve or contingency fund does not violate that section. *In re Fries,* 68 B.R. 676, 683 n. 7 (Bankr.E.D.Pa.1986). Such a cushion "... is necessary in chapter 13 budgeting to guard against life's unexpectancies. It is not in the public's interest to squeeze the last dollar from chapter 13 debtors to fund a chapter 13 plan." *In re Otero,* 48 B.R. 704, 708 (Bankr.E.D.Va.1985). To do so would cause additional time and expense to the debtor, his counsel, and the trustee in constantly amending the plan to reflect the changes to the debtor's regular income and expenses, not to mention burdening the court's calendar.

Reference to the debtor's Chapter 13 Statement shows that the debtor earns $225.00 bi-weekly and that his monthly take home pay is $430.00. The statement reflects that his non-debtor spouse earns $220.00 per week and her monthly take home pay is $640.00. The total monthly household expenses are $810.00 leaving an excess income over expenses of $260.00 per month. The debtor proposes to pay $100.00 per month to fund his plan.

During his testimony the debtor admitted that he had signed the Chapter 13 Statement and, after a cursory review of the document on the witness stand, admitted that all of the figures were correct. During further direct and cross examination, however, the debtor recanted this testimony and noted an error in the figures. He explained that he made $225.00 bi-weekly but after taxes and other governmental deductions that his take home pay per month was $400.00 rather than $430.00. Based on the minimum federal income tax of 15%, plus state tax and social security deductions his explanation of the error is credible. He also explained that upon advice of his counsel, debts belonging only to his wife such as doctor bills and a bank credit card were not included in the estimate of monthly income set out on the Chapter 13 Statement because they were not properly part of the disposable income analysis. The debtor contended that his contribution to the monthly household ex-

penses included $250.00 for food and $50.00 for gas and transportation. This calculation left the debtor $100.00 to commit to his chapter 13 plan from his $400.00 monthly take home pay. He explained that he and his wife kept their expenses separate and that she paid all of the other expenses.

Counsel for the Creditor asked the debtor what the result would have been if he had been responsible for a rent payment of $400.00 and had no excess funds to commit to the plan. The debtor explained that he would not make the total $400.00 payment. The debtor asserted that after his share of the monthly expenses was paid that his disposable income was $100.00 which he was committing to fund his plan. The Creditor argued that "disposable income" is the excess of the income over the expenses of the *entire* household, including in this case a non-debtor spouse. The Creditor asserted that the disposable income in this case was $260.00 and only $100.00 had been committed to fund the chapter 13 plan. Therefore, the Creditor concluded that the plan could not be confirmed as violative of 11 U.S.C. § 1325(b)(1)(B) in that it failed to provide for all disposable income to be applied to make payments under the plan.

■ The Creditor's objection on this issue is well taken and supported by case law. The court agrees that income and thus expenses of the non-debtor spouse must be included in the debtor's Chapter 13 Statement. *Saunders,* 60 B.R. at 187. Additionally, as suggested by the *Strong* court, ". . . an accurate analysis of chapter 13's disposable income test (11 U.S.C. § 1325(b)) is impossible unless the income . . .," and expenses of the non-debtor spouse are included in the budget. *Strong,* 84 B.R. at 543. This is not to say, however, that *all* excess income, even that belonging to the non-debtor spouse must be dedicated to fund the plan in order to comply with § 1325(b)(1)(B). The debtor admitted that there may have been errors in his Chapter 13 Statement concerning his monthly take-home pay. However, the court does not believe the errors were intentional or meant to mislead the court.

Nevertheless, the debtor's Chapter 13 Statement is not accurate and by the debtor's admission does not include debts for which only his non-debtor spouse is liable.

The court finds that an application of the chapter 13 disposable income test must include the income and expenses of the non-debtor spouse. Therefore, the Creditor's objection is SUSTAINED. The debtor hereby is given until *September 28, 1989* to amend his chapter 13 Statement and Plan to correct any discrepancies and to include the income and expenses of his non-debtor spouse. Because of this deficiency of information, the court is unable to complete an accurate analysis of whether the plan provides for all of the debtor's disposable income to be committed to fund the plan. In addition, the court notes that a reasonable reserve or contingency fund in the debtor's budget would not violate 11 U.S.C. § 1325(b)(1)(B) and is properly a part of the disposable income analysis. *Fries,* 68 B.R. at 683 n. 3.

### 2. *Good Faith Analysis*

Inasmuch as the debtor would have no right to amend his chapter 13 Statement and Plan if the court had determined that the petition and plan were filed in bad faith, the court proceeds to discuss the good faith analysis.

As mandated by the Seventh Circuit Court in *Smith,* the bankruptcy court must make an adequate good faith finding in the filing of the petition as well as the filing of the plan. *Smith,* 848 F.2d at 816 n. 3. The appeals court explained that the procedural filing requirements of chapter 13 often cause the good faith inquiry in the filing of the petition and the plan to be the same. The appeals court explained that "[f]requently, in the chapter 13 context there will be an overlap between the two good-faith inquiries because the debtor's plan must be filed within a very short time after the case is commenced. Bankr.Rule 3015." *Id.* (quoting *In re March,* 83 B.R. 270, 275 (Bankr.E.D.Pa.1988)). Therefore, the court simultaneously will discuss the good faith factors in relation to the filing of the plan as well as the filing of the petition.

Section 1325(a)(3) provides that the debtor's plan must be *proposed* in good faith, not that the debt was incurred in good faith. *Smith*, 848 F.2d at 819 (emphasis added). As a result, "... a chapter 13 plan could be confirmed despite even the most egregious pre-filing conduct, where other factors suggest that the plan nevertheless represents a good faith effort by the debtor to satisfy his creditor's claims." *Id.* (quoting *Neufeld v. Freeman*, 794 F.2d 149, 153 (4th Cir.1986)).

Perhaps one of the most important confirmation requirements that must be found by the bankruptcy court, is that of the debtor's good faith in filing the plan. *Smith*, 848 F.2d at 817. The issue generally is brought before the court as the result of an objection by the trustee or a party in interest questioning the debtor's good faith. Bankr.R. 3020(b)(2) (1989). Even where no objection is raised, the court is entitled and possibly obligated to conduct an inquiry into a chapter 13 debtor's good faith. *See Steele v. Mortgage Corporation of the South (In re Steele)*, 34 B.R. 172, 173–74 (Bankr.M.D.Ala.1983); R. Ginsberg, *Bankruptcy* (PH) ¶ 14,404 at 14,041 (1986). This inquiry is often supplemented by a report from the standing chapter 13 trustee. Once the debtor's good faith has been questioned, the debtor has the burden of proof to establish his good faith. *Warren*, 89 B.R. at 93. However, where the standing trustee reports to the court that the debtor has proposed the plan in good faith, the debtor need not introduce affirmative evidence, and instead the burden of going forward shifts to the objector to show evidence that the plan was not proposed in good faith. *Id; In re Hines*, 723 F.2d 333, 334 (3rd Cir.1983).

The analysis necessarily begins with an understanding of the concept of "good faith." That term is not defined by the Bankruptcy Code or its legislative history and courts have held that no precise or comprehensive definition is possible. *Smith*, 848 F.2d at 817. It is an amorphous notion, controlled by a proper factual inquiry. *Metro Employees Credit Union v. Okoreeh–Baah (In re Okoreeh–Baah)*,

836 F.2d 1030, 1033 (6th Cir.1988). The difficulties in a good faith analysis were accurately summarized in one recent case where the court explained:

[t]he Bankruptcy Code does not define "good faith." There is no illuminating legislative history. More than 300 reported "good faith" decisions form a maze of rules and exceptions swallowing rules. Nearly identical fact patterns have produced inconsistent results within judicial districts and across the circuits. The reported decisions demonstrate that "good faith" is an illusive statutory description of the limits of Chapter 13 relief.

*Nelson v. Easley (In re Easley)*, 72 B.R. 948, 950 (Bankr.M.D.Tenn.1987) (collecting cases).

The Seventh Circuit has joined the majority of circuits in holding that the good faith determination must be made on a case-by-case basis in reliance on the facts of each case. *Smith*, 848 F.2d at 817; *Rimgale*, 669 F.2d at 431. With no comprehensive definition available the Seventh Circuit has adopted a "totality of the circumstances" test. *Rimgale*, 669 F.2d at 432–33; *Smith*, 848 F.2d at 821. Unfortunately, the circuits have not offered much guidance to the bankruptcy courts on the proper application of the totality of the circumstances analysis. Since no bright line rule exists to assist the court in applying the good faith analysis, the inquiry must be fact sensitive and should focus on whether the plan abuses the provisions, purpose, or spirit of chapter 13. *Ravenot v. Rimgale (In re Rimgale)*, 669 F.2d 426, 431 (7th Cir.1982); *Deans v. O'Donnell*, 692 F.2d 968, 972 (4th Cir.1982); 5 *Collier on Bankruptcy* (MB) ¶ 1325.04 at 1325–11 and 12 (15th ed. Supp.Sept.1988).

To guide the bankruptcy court in applying the totality of the circumstances test, the Seventh Circuit set forth a nonexhaustive list of relevant factors which should be considered in the inquiry. *Rimgale*, 669 F.2d at 432–33; *Smith*, 848 F.2d at 813–22. Those factors include:

1. Does the proposed plan state the debtor's secured and unsecured debts accurately?
2. Does it state the debtor's expenses accurately?
3. Is the percentage of repayment of unsecured claims correct?
4. If there are or have been deficiencies in the plan, do the inaccuracies amount to an attempt to mislead the bankruptcy court?
5. Do the proposed payments indicate "a fundamental fairness in dealing with ones' creditors?" [5] *Rimgale*, 669 F.2d at 432–33 (citations omitted).
6. What was the debtor's motive in seeking chapter 13 relief? *Smith*, 848 F.2d at 818.
7. What are the circumstances under which the debt was incurred? *Id.*
8. Is the debt nondischargeable under chapter 7 as the result of the debtor's pre-filing conduct? *Id.*
9. Is it the debtor's intention to fulfill the terms of the plan? *Id.* at 821.

█ While no one factor is controlling, the cumulative effect may lead to a finding of the absence of good faith. However, "[c]are must be taken not to allow revulsion over a debtor's past deeds to detract from or impair a finding of good faith where that debtor is making an effort to satisfy past obligations to the extent possible and still embark upon a fresh start." *In re Chura*, 33 B.R. 558, 560 (Bankr.D. Colo.1983). Only where there is a showing of serious debtor misconduct or abuse should a chapter 13 case be found lacking good faith. *Barnes v. Whelan (In re Barnes)*, 689 F.2d 193, 200 (D.C.Cir.1982). Thus, "[t]he bankruptcy court must ultimately determine whether the debtor's plan, given his or her particular circumstances, satisfies the purposes undergirding chapter 13: a sincerely-intended repayment of pre-petition debt consistent with the debtor's available resources. The decision should be left to the bankruptcy

court's common sense and judgment." *Okoreeh–Baah*, 836 F.2d at 1033.

The court now will examine those factors which the Creditor claims will support a finding of bad faith by the debtor in filing his petition and plan. As suggested by the *Smith* court, an overlap between the good faith inquiry into the filing of the petition and proposing the plan may occur because of the procedural timing of the bankruptcy petition and the plan. Bankr.R. 3015 (1989); *Smith*, 848 F.2d at 816 n. 3.

█ The main thrust of the Creditor's allegations of bad faith seems to arise from the nature of the underlying claim and its alleged nondischargeability. The Creditor contends that its claim would have been nondischargeable in chapter 7. However, the nondischargeable nature of a debt under chapter 7, is not alone sufficient as a matter of law to constitute bad faith. *Smith*, 848 F.2d at 818; *In re Chaffin*, 816 F.2d 1070, 1074 (5th Cir.1987), opinion modified on reconsideration, 836 F.2d 215, 216 (5th Cir.1988); *Neufeld*, 794 F.2d at 152. *See generally*, H.R.Rep. No. 595, 95th Cong., 1st Sess 129 (1977), *reprinted in* 1978 U.S.Code Cong. & Admin.News 5963, 6090 ("[t]he fact that a discharge would not be available in a liquidation case should furnish a greater incentive for the debtor to perform under the plan").

The claim is not automatically nondischargeable under 11 U.S.C. § 523(a)(6). The Code requires that after notice and a hearing the court must determine whether a claim is to be excepted from discharge. 11 U.S.C. § 523(c) (1989). As the question of whether the debtor's obligation would be excepted from a chapter 7 discharge is not properly before the court, the court has no opinion on the matter. Likewise, if nondischargeability of the debtor's obligation were premised on § 523(a)(9), the finding also is not automatic. The courts are split on their interpretation of the language of § 523(a)(9) which states that its applicability is limited to "... the extent that the

---

**5.** "In this connection, the bankruptcy court may wish to examine the timing of the bankruptcy filings, the proportion of the total unsecured debt that is represented by the [state tort] judg-ment, and the equities of classifying together ordinary consumer debt and a judgment debt arising out of intentionally tortious conduct." *Rimgale*, 669 F.2d at 433 n. 22.

debt arises from a judgment or consent decree...." *Stackhouse v. Hudson (In re Hudson)*, 859 F.2d 1418 (9th Cir.1988) (judgment not required); *Young v. Rose (In re Rose)*, 86 B.R. 86 (Bankr.E.D.Mich. 1988) (judgment not required); *Allstate Insurance Company v. Smith (In re Smith)*, 83 B.R. 433 (Bankr.E.D.Mich.1988) (judgment not required); *Leach v. Reckley (In re Leach)*, 63 B.R. 724 (S.D.Ind.1986) (section not limited (§ 523(a)(9)) to claimants who obtain judgment before bankruptcy); *but see, General Accident Insurance Company v. Cain (In re Cain)*, 96 B.R. 115 (Bankr.N.D.Ohio 1988) (debt not excepted from discharge where creditor had not obtained state court judgment); *Searight v. Thomas (In re Thomas)*, 51 B.R. 187 (Bankr.E.D.Va.1985) (court considered that a creditor who had not had time to seek a judgment in state court could be allowed relief to diligently prosecute a

claim); *Hudson*, 859 F.2d at 1424 (Wiggens, J. dissenting) (strong dissent supporting the interpretation that a judgment or consent decree is required). Therefore, the court concludes that this factor is pertinent but its weight is diminished by the conflicting case law and the fact that § 523(a)(6) and (9) are not self-executing.

As the *Smith* court acknowledged, the bankruptcy court must consider whether the debtor's sole motive in filing the chapter 13 was to discharge an otherwise nondischargeable debt and the circumstances surrounding the debt. Those cases cited frequently by the Creditor for the proposition that the debtor's attempt to use chapter 13 to discharge an otherwise nondischargeable debt relate to debts that are the result of intentional torts or consensual conduct.[6] These cases are enlightening but

---

**6.** *Troyer*, 24 B.R. 727; (commodity broker debtor admitted to the intentional conversion of at least $265,000.00 of his investors' money and based on this admission the court found him ineligible for chapter 13 because his admitted unsecured liquidated debts exceeded $100,-000.00); *In re Chase*, 43 B.R. 739 (D.Md.1984) (debtor was convicted of child molesting and negotiated a consent decree with the parents of the victim that he would pay them $25,000.00 in exchange for their agreement not to testify at his sentencing hearing and possibly to drop the civil suit, debtor admitted that the purpose of the consent decree was to procure a lighter sentence, and he further admitted that at the time he signed the consent judgment he did not expect to pay the money; held, plan not proposed in good faith and to confirm would allow the debtor to profit from his own wrong where he never did intend to honor the debt); *In re Todd*, 65 B.R. 249 (Bankr.N.D.Ill.1986) (a creditor received a garnishment judgment stemming from a 42 U.S.C. § 1983 violation wherein the debtor was found to have intentionally and willfully violated the creditor's civil rights during an improper arrest and physical beating of the creditor detainee by the debtor police officer, shortly thereafter the debtor filed chapter 13; held, plan lacked good faith); *In re Kourtakis*, 75 B.R. 183 (Bankr.E.D.Mich.1987) (creditor held state court judgment against the debtor for injuries suffered during an unprovoked and unmitigated assault and ·battery by the debtor which also resulted in a criminal conviction; held, plan not proposed in good faith for this and other circumstances); *In re Makarchuk*, 76 B.R. 919 (Bankr.N.D.N.Y.1987) (debtor filed chapter 7 with only two scheduled debts, both of which were consensual student loans which she sought to be held dischargeable claiming

undue hardship; after an adverse judgment by the court she converted to chapter 13; held, the fact that the debtor's scheduled obligations consisted of only two otherwise nondischargeable student loans revealed that the undeniable and dominant purpose of bankruptcy was to discharge these debts and in fact the proposed payments under the plan were allegedly more than she would have been required to pay under the original loan terms); *In re Newberry*, 84 B.R. 681 (Bankr.E.D.Cal.1988) (consensual student loans; held, plan not proposed in good faith); *Warren*, 89 B.R. 87 (creditor obtained a state court judgment against the debtor for embezzlement; upon the filing of garnishment proceedings debtor filed chapter 7 and converted to chapter 13 when the creditor filed a nondischargeability complaint; all but $3,700.00 of the debtor's unsecured debt of about $45,000.00 was the creditor's embezzlement judgment; held, case remanded to bankruptcy court for totality of the circumstances inquiry into debtor's good faith); *Rimgale*, 669 F.2d 426 (debtor and his wife fraudulently induced the creditor to turn over to them all of the proceeds of a life insurance policy where the creditor was the beneficiary; creditor obtained a state court judgment against the debtor and his wife and objected to confirmation of the debtor's chapter 13 plan alleging lack of good faith in proposing the plan; held, remanded to bankruptcy court to consider good faith under totality of the circumstances); *Smith*, 848 F.2d 813 (three months after state court civil judgment entered against the debtor for numerous violations of the Indiana Deceptive Consumer Sales Act whereby debtor fleeced senior citizens by making unnecessary repairs; held, remand to bankruptcy court to consider good faith by totality of the

not dispositive. The debtors' conduct in the cases cited readily can be distinguished from the conduct of the debtor in the case at bar. Here, the debtor's conduct which caused the accident giving rise to the Creditor's claim was the result of negligent or reckless behavior. While the *consequences* of the debtor's acts may have been equally egregious or reprehensible as the cases set out above, those cases involved intentional acts or consensual obligations which by their nature differ from negligent or reckless acts.

The Creditor directs the court's attention to the case of *In re Cregut,* 69 B.R. 21 (Bankr.D.Ariz.1986), which the Creditor claims is on point with this case. The court questions this characterization but acknowledges some similarities. In *Cregut,* the matter before the court was the tort creditor's motion to dismiss the chapter 13 petition. The debtor had been involved in a car/motorcycle accident with the creditor's husband who was killed. The debtor was tried for negligent homicide and a restitution order was entered against him in the amount of approximately $24,000.00. The creditor filed a wrongful death suit against the debtor on March 4, 1985, with the trial set for January 24, 1986. The debtor filed his bankruptcy petition on April 10, 1985.

The debtor listed only two creditors in his schedules, Peter Cregut, his father, for $34,000.00 and the tort creditor holding an unliquidated and disputed claim. The debtor was a college student whose only source of income during the school year was the $300.00 per month that he received from his father. When not enrolled in school, he worked full time in a hospital and received no money from his father. The debtor's amended plan proposed payments of $100.00 per month for 60 months. The $34,000.00 debt to his father consisted of $11,500.00 previously paid to the creditor on behalf of the debtor, pursuant to the restitution order; $12,618.55 in attorney fees for the negligent homicide proceedings; $6,966.00 for rehabilitation at a hospi-

tal and $3,000.00 for attorney's fees for filing the chapter 13 petition. The court framed the issues as whether Cregut was eligible to be a debtor under 11 U.S.C. § 109(e) and whether the petition was filed in good faith pursuant to 11 U.S.C. § 1325(a)(3). *Id.* at 22.

The answer to the first inquiry was negative. The court found that the monthly payments from the father were properly characterized as gifts and thus Cregut could not be a debtor since he had no source of regular income. The court concluded that the "restitution" to the father was not a legal obligation that would qualify as a debt under § 109(e). The court also held that the speculative tort claim was contingent and unliquidated and thus not a debt under § 109(e). The ramifications of this finding were enough to dismiss the petition. The court, however, went on to the good faith issue where its discussion was brief and without much factual explanation. The court stated that it must

... inquire whether the debtor has misrepresented the facts in his plan, unfairly manipulated the Code, or otherwise proposed his chapter 13 plan in an inequitable manner. The court must make its good faith determination in the light of all militating factors. The record before the court demonstrates that Mr. Cregut filed his petition in bad faith for the purposes of avoiding the potential liquidation of movant's tort claim in a wrongful death action in Superior Court. Given the evidence of lack of sufficient income, the lack of debts and the timing of the filing of this petition in chapter 13 on the eve of the Superior Court litigation the court concludes on the basis of the appropriate case law, the arguments of counsel, and the documents on the record, that no proper purpose would be served to allow this voluntary case under chapter 13 to continue.

*Cregut,* 69 B.R. at 23. Regardless of the good faith issue, the petition would have

circumstances in filing the petition and plan); *In re Norman,* 95 B.R. 771 (Bankr.D.Colo.1989) (debtors convicted in state court of illegal possession and theft of wildlife and were ordered

to pay restitution, fines, penalties, and costs which the debtors attempted to discharge in chapter 13; held, criminal fines, penalties, and restitution are not dischargeable in chapter 13).

been dismissed because *Cregut* could not meet the qualifications set out in § 109(e).

In the case at bar, there is no longer any issue before the court questioning Belt's eligibility to be a debtor under § 109(e). He has regular income and other legitimate debts in addition to the Creditor's claim. Although it may be true that both the *Cregut* case and the case at bar involve pending state court tort claims, many of the facts surrounding the *Cregut* accident and his pre-petition conduct were not discussed in the opinion. Unfortunately, the opinion was only two pages long. While the facts that supported the *Cregut* court's reasoning may have been similar and helpful to this court's analysis they were not made a part of the *Cregut* opinion, aside from the fact relating to the timing of the bankruptcy filing. This fact alone is insufficient in that this circuit is bound to examine the totality of the circumstances. *Smith*, 848 F.2d at 821.

The consideration of the nondischargeable nature of a debt under chapter 7 in the totality of the circumstances test appears to conflict with the concept of a discharge in chapter 13 set out in § 1328(a).[7] The exceptions to discharge described in 11 U.S.C. § 523(a) apply to cases under chapters 7, 11, and 12. Section 1328(a) lists the exceptions to discharge in cases under chapter 13.[8] The differences are glaring. The claim from which the debtor seeks a discharge is not of the kind made nondischargeable by § 1328(a). It seems logical that if Congress had intended other exceptions to discharge, such as those enumerated in § 523(a), it could have easily added those exceptions to § 1328(a). Thus, the bankruptcy court is left to believe that Congress intended their absence.

The Creditor's contention that its claim is in excess of the statutory limits of chapter 13 rendering the debtor ineligible under chapter 13 was discussed under the section Jurisdiction, *supra.*

The Creditor submits that the debtor has failed to allocate all of his disposable income to fund his chapter 13 plan. 11 U.S.C. § 1325(b)(1)(B) (1989). As set out, *supra*, the court is unable to perform a disposable income analysis at this time because the debtor's Chapter 13 Statement is not accurate. The debtor has been directed to amend his Chapter 13 Statement. This factor weighs more heavily in the court's good faith analysis concerning the proposal of his plan than the determination of good faith in filing the petition. A plan cannot be confirmed unless this requirement is met or the property distributed under the plan is not less than the amount of the claim. 11 U.S.C. § 1325(b)(1)(A) and (B) (1989). Therefore, if the plan conforms with this section and is otherwise confirmable this factor will not support the Creditor's allegation of the debtor's lack of good faith.

The Creditor points out that the debtor's bankruptcy petition was filed four days before the state court trial. The debtor explained that the timing was the result of difficulties he encountered in securing the funds necessary to file his chapter 13 petition. The court is unsure of the date the Creditor commenced the state court action. The court is aware of the fact that the debtor and the Creditor were negotiating a settlement prior to the bankruptcy. However, the specifics of that process are not before the court at this time and the court is not persuaded that the timing of the filing involves any more than the debtor's explanation of his inability to finance the bankruptcy.

It stands to reason that if a debtor files a bankruptcy petition without participating in settlement negotiations he would be prey to an allegation that the timing of the filing indicated a lack of good faith because of his failure to negotiate. In this case where the debtor did participate in settlement negotiations he also was charged with bad faith in filing his petition. The debtor in either scenario is hamstrung. There is no good time to file for chapter 13 relief when one of the claims is based on an alcohol-related accident resulting in death. The Code does not require a debtor to wait until all

---

7. *See, supra,* n. 3.

8. *But see,* 42 U.S.C. § 294f(g) (1981).

claims are reduced to judgment before a bankruptcy petition may be filed.

The Creditor submits that the debtor's pre-filing conduct and the circumstances surrounding the accident indicate a lack of good faith in filing his chapter 13 petition. The specific facts are set out, *supra*, by joint stipulation of the parties. The debtor has admitted that his conduct was negligent and even reckless but adamantly denies the Creditor's assertion that the conduct was willful and malicious. The debtor denies that he intended to hit the Kuchik vehicle or that he intended for Mr. Kuchik to perish in the accident. A claim that results from driving under the influence of alcohol is by its nature surrounded by inflammatory circumstances and conduct.

Because of the absence of an exception to discharge for a claim of this nature in § 1328(a) similar to the exceptions set out in § 523(a), the court can find little if any guidance as to the effect of negligent or reckless conduct in the good faith analysis of chapter 13. Conduct such as the debtor's may well signal possible "... abuse of the provisions, purpose, or spirit ..." of chapter 13. *In re Terry*, 630 F.2d 634 at 635. (8th Cir.1981) However, a chapter 13 plan may be confirmed even in the face of egregious pre-filing conduct if other factors suggest that the plan represents the debtor's good faith effort to satisfy his creditors' claims. *Neufeld*, 794 F.2d at 153. The debtor's pre-filing conduct, thus, must be considered in the grand scheme of good faith.

The Creditor alleges that the debtor's choice to extend his plan only 36 months, less than the maximum set out under the Code, is further evidence of the debtor's lack of good faith. While the debtor is not required to propose a 60–month plan in order to demonstrate good faith, *In re Ellenburg*, 89 B.R. 258, 263 (Bankr.N.D.Ga.1988); *Kourtakis*, 75 B.R. at 187, the length is relevant as it relates to the debtor's state of mind and intentions. *Id; contra, In re Chase*, 28 B.R. 814, 819 (Bankr.D.Md.1983) (court held lack of good faith where debtor proposed plan for less than 60 months involving judgment against

the debtor based on his sexual assault of a minor). Neither the trustee, an unsecured creditor, *In re Davis*, 68 B.R. 205, 213 (Bankr.S.D.Ohio 1986), nor the court can force the debtor to extend a plan beyond 36 months but circumstances might exist for approval of a plan beyond 36 months. *In re Blackwell*, 5 B.R. 748, 752 (Bankr.W.D. Mich.1980).

In order for the debtor to extend a plan beyond 36 months, the debtor must seek court approval based upon a finding of "cause." 11 U.S.C. § 1322(c) (1989). The purpose of this section requiring court approval for plans beyond 36 months is to protect the debtor from involuntary participation in a chapter 13 plan. *Fries*, 68 B.R. at 680. Some courts have held that increased payments to creditors do not by themselves provide "cause" to extend a plan beyond 36 months, *In re Karayan*, 82 B.R. 541, 543 (Bankr.C.D.Cal.1988), but other courts have held that "cause" may be found if the plan proposes to pay at least 70% to unsecured creditors or to allow the debtor to discharge what would otherwise be a nondischargeable debt. *Id. But see, In re Gathright*, 67 B.R. 384, 391 (Bankr.E. D.Penn.1986), *appeal denied*, 71 B.R. 343 (E.D.Pa.1987) (nature of indebtedness, in this case a student loan, cannot possibly constitute cause to extend a plan). A creditor's dissatisfaction with its treatment under the plan is not reason in and of itself, to extend the plan beyond 36 months. *Fries*, 68 B.R. at 680. A finding of "cause" to extend the plan necessarily relies on the discretion of the bankruptcy court. *In re Price*, 20 B.R. 253, 255 (Bankr.W.D.Ky.1981). Therefore, the debtor's failure to propose a plan that extends beyond 36 months is not tantamount to a finding of bad faith. The court cannot require the debtor to extend his plan beyond 36 months, although he is free to seek approval for an extension if he so chooses.

The Creditor alleges bad faith because the attorney for the debtor is receiving $2,000.00 in attorney fees to represent the debtor and the unsecured creditors will share only a total of $2,990.00. The Creditor has not suggested that the $2,000.00 fee is unreasonable or questionable based

on the services rendered and the court notes that in many chapter 13 plans the attorney for the debtor, as a priority claimant, often receives more than the unsecured creditors. Absent a showing relative to the reasonableness or propriety of the attorney fees this factor adds nothing to the good faith analysis.

 The Creditor points out that the debtor admitted that the sole reason for filing his bankruptcy petition was to discharge the Creditor's claim. The court notes that under withering cross-examination the debtor was asked "... [w]as the sole reason you filed a chapter 13 to discharge the Creditor's claim?" The debtor answered affirmatively. However, when questioned by his own counsel the debtor explained that upon the advice of his counsel he chose chapter 13 in order to pay off his debts according to his ability and to receive the discharge rather than liquidating under chapter 7. The debtor's answers were contradictory at best but the debtor's credibility leads the court to consider the form of the question as well as the debtor's answer. Even if his sole reason for filing were to discharge the Creditor's claim, both must be considered, but will not, as a matter of law, result in a finding of bad faith. *Smith*, 848 F.2d at 818. The contradictory nature of the debtor's answers will go to the weight of this factor.

 The Creditor next complains that the debtor has not proposed a "meaningful" payment to the Creditor. Since the enactment of the Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub.L. No. 98–353, 98 Stat. 333 (1984) ("BAFJA"), a plan proposed in good faith does not require any specific amount or percentage of payments to the unsecured creditors. *Smith*, 848 F.2d at 820. Instead, the court will apply the "ability to pay" or disposable income test, *Id.*; 11 U.S.C. § 1325(b)(1)(B) (1989), where a creditor has objected to confirmation and the creditor will not receive full payment under § 1325(b)(1)(A). 11 U.S.C. § 1325(b)(1)(A) (1989). The unsecured creditors have a right to expect the debtor to commit all of his disposable income for 36 months and nothing more,

including a demand for meaningful payment. *Karayan*, 82 B.R. at 544. There is no longer any reason for the amount of the plan payments to be considered as part of the good faith analysis. 5 *Collier on Bankruptcy* (MB) ¶ 1325.04 at 1325–17 (15th ed. Supp.Sept.1988). Thus, the absence of meaningful payments does not add to or detract from the good faith analysis.

The Creditor further alleges that the debtor's failure to make any payments to the Creditor before filing his bankruptcy petition violated his probation, and thus indicates the debtor lacked good faith in filing his petition. The terms of the debtor's probation were set out by Judge Jerome Frese in the case captioned *State of Indiana v. Belt*, No. 25390, Criminal Docket St. Joseph Circuit Court, February 10, 1987. The pertinent part of the entry states:

... [t]he court informs the defendant of the conditions under which is [sic] probationary period now begins. Those are as follows: Conditions of probation are as follows: First, the defendant is to explicitly obey all rules, regulations and requests of the Probation Department. Failure to do that is a violation of probation. 2) The defendant is to avoid all violations of local, state and federal laws. Defendant's violation of any local, state or federal law will be also a basis to revoke probation. 3) The defendant is not to drive any motor vehicle during the interim of his probationary period, independent of any revocation that the State of Indiana may or may not make. 4) The defendant is to make each calendar year starting calendar 1987, three public addresses to area high schools to students concerning drinking and driving. The defendant is to inform the probation department of the time of the talks, the school and the place. Said talks are to be made three each year during the defendant's probation. 5) Final condition, consistent with the defendant's legal rights in any civil proceedings, not to infringe on his legal rights in any civil procedure, defendant is to adopt a plan of making restitution to victim's family

in this case to the full extent of his capability beyond making his own basic livelihood.

Creditor's Exhibit A.

The debtor denies this allegation and submits that his chapter 13 plan of reorganization is consistent with the requirement that he "... adopt a plan of making restitution to the victim's family in this case to the full extent of his capability beyond making his own basic livelihood." Creditor's Exhibit A, entry dated ·February 10, 1987. The debtor contends that his chapter 13 plan represents the full extent of his capability to make restitution payments. In support of his contentions, the debtor elicited testimony from Napoleon Pittman, a St. Joseph County Adult Probation Officer. Mr. Pittman testified that he prepared the debtor's presentencing report in the criminal matter captioned above. Mr. Pittman stated that the restitution order setting out the probation requirements was very vague. He explained that a judge enters the order and the Probation Department collects the fines, court costs, and any other ordered pecuniary remuneration. He stated that in his opinion the debtor's chapter 13 plan covering the Creditor's claim would fulfill the obligations of the probationary restitution order.

As the result of Mr. Pittman's testimony, this court concludes that the debtor's failure to make any payments to the Creditor prior to filing his bankruptcy petition did not violate the terms of his probation. Therefore, any alleged failure to make payments does not appear to relate to the good faith analysis. Whether or not the debtor is in violation of any of the terms of his probation is not within this court's jurisdiction and the court has no opinion on the matter.

The Creditor next alleges that the debtor's chapter 13 is a "veiled chapter 7." While not defined by the Creditor, the court understands this term to mean that the debtor has bypassed the nondischargeability of debts under chapter 7 simply by using chapter 13. *Warren,* 89 B.R. at 95–

99 (debt in issue was the result of the debtor's embezzlement); *In re Marachuk,* 76 B.R. 919, 923 (Bankr.N.D.N.Y.1987) (debt in issue was an otherwise nondischargeable student loan); *In re Zelnar,* 91 B.R. 448, 451 (Bankr.N.D.Ohio 1988) (debt in issue was the result of the debtor's embezzlement from two separate employers). Thus, this term encompasses other *Smith* totality of the circumstances factors such as the debtor's prefiling conduct, the potential nondischargeability of the claim, the debtor's motive in filing the chapter 13, discussed, *supra,* and will be included in the overall analysis.

The court also notes that the debtor testified that the value of his personal property, household goods and clothing is less than $3,000.00. Under the Indiana exemption scheme the debtor is allowed a $4,000.00 exemption for personal property. Ind.Code 34–2–28–1(a)(2) (1986 Supp.). He stated that the balance of his checking and savings accounts were less than $45.00. Thus, under a chapter 7 liquidation analysis it appears that the debtor's creditors would receive nothing whereas under his chapter 13 plan, as proposed,[9] the creditors have been scheduled to share in about $3,000.00.

The Creditor's final point concerns the ratio of the Creditor's claim to the other unsecured claims. It is difficult if not impossible for the court to perform such a mathematical calculation with respect to this issue because the Creditor's claim is unliquidated. Any attempt by the court to approximate the value would be inappropriate at this time. The parties agree, however, that the claim does have value and the legitimacy of the claim has been validated by the debtor.

This court has given careful consideration to each factor of the *Smith* test and the contentions of the parties and has found it impossible to ignore the statutory grant of a discharge in chapter 13 cases set out in 11 U.S.C. § 1328(a). Congress easily could have included in this section's exceptions to discharge those debts covered by § 523(a)(6) and (9). The court finds their

**9.** This plan does not reflect changes that may result from the amendment to the debtor's

Chapter 13 Statement as directed by the court, *supra.*

absence dispositive of the fact that such debts must then be dischargeable if the debtor has complied with the other requirements of this title. "Our task is to construe the statute, not to construct it." *Deans*, 692 F.2d at 971. The court feels bound to apply the statute as it is written. "[W]e are not free to rewrite the legislation as we think best, but neither are we able to ignore the broad equitable principles that have characteristically animated American bankruptcy law." *Rimgale*, 669 F.2d at 429. In applying the good faith analysis the court is ever mindful that "[o]nly where there has been a showing of serious debtor misconduct or abuse should a chapter 13 plan be found lacking in good faith." *Smith*, 848 F.2d at 821 (quoting 5 *Collier on Bankruptcy* (MB) ¶ 1325.04[3] at 1325–17 (footnotes omitted)). Pursuant to § 1328(a), the Creditor's claim is not excepted from discharge in a chapter 13. However, the inquiry does not stop here as the court must also apply the good faith totality of the circumstances test.

It appears from the debtor's plan and schedules that his debts and expenses have been reported accurately. However, as set out before, the debtor is directed to amend his Chapter 13 Statement to reflect those debts or expenses on which his non-debtor spouse is solely liable. The court is not persuaded that any inaccuracies in the debtor's documents were made with intent to mislead or perpetrate a fraud on the court or his creditors. The problem stems from the philosophical differences of the attorneys and not from the fault of the debtor.

The timing of the filing of the debtor's bankruptcy petition was damaging to the Creditor's state court case. Unfortunately, a factor like this could always suggest a lack of good faith from a creditor's point of view because there is rarely a "good" time for a debtor such as Belt to file. The debtor explained that his filing was on the advice of his attorney and logically was part of his counsel's litigation strategy. Regardless of the source of the advice or its legitimacy, it was the debtor who had the final choice on whether to file. The debtor explained that he did not intentionally wait until the 11th hour to file his petition and could have filed it earlier. The debtor stated that the delay in filing was the result of financial problems. While this explanation does not totally diffuse the impact of the timing of the filing, it does lessen the effect.

As stated *supra,* the court is unable to determine the proportion of the Creditor's claim to the other unsecured claims because the value of the claim is unliquidated and disputed. The debtor and Creditor agree that the amount of the Creditor's claim as filed exceeds $100,000.00. While the court is not in a position to value the claim, it acknowledges that the claim is valuable and legitimate.

Unlike § 523(a), § 1328(a) does not except from discharge debts that result from operating a motor vehicle while legally intoxicated or debts that stem from willful and malicious injury caused by the debtor. The Creditor's claim may be nondischargeable under these sections but such a finding is not automatic. The issue of its nondischargeability is not before the court at this time and the court expresses no opinion on the matter. While the conduct of the debtor which caused Mr. Kuchik's death might be termed "egregious," it was not the result of consensual or intentional behavior by the debtor.

The debtor is not required to propose his plan beyond 36 months and can only do so with the approval of the court for "cause." "Cause" is not necessarily found where the debtor simply desires to pay the creditors more. This is not to say, though, that the court would not entertain a motion to extend the plan if filed by the debtor. The court is not persuaded that the attorney fees paid by the debtor to his counsel are totally unreasonable for the work involved. It is well settled that taking advantage of the availability of discharge does not amount to bad faith, and meaningful payments under the plan are no longer required.

This case by its very nature is enveloped in moral indignation. However, as properly pointed out by the Creditor, it did not request the court to deny the debtor's discharge merely because his discharge would

be morally repulsive. Reply Brief of Movant, Estate of Kuchik at 19. The court therefore finds that the debtor's petition was filed in good faith. The court is sympathetic to the plight of the Creditor but does not feel that it is within the province of a bankruptcy court to assume that § 1328(a) means any more than it says. The court is unable on the facts before it to find otherwise. This result may be offensive to some but the answer lies with the legislature, not the judiciary. *Chase,* 28 B.R. at 819.

The only case that relates to a debtor's negligent or reckless conduct is *Cregut.* Unfortunately, that case offers little guidance. The court's decision resulted in a finding that *Cregut* could not qualify as a debtor. The court did state that the plan was not filed in good faith but failed to provide much of a discussion which could assist the court in this case. Here, Belt is properly a debtor under chapter 13. There has been no showing that the debtor planned the accident which took Mr. Kuchik's life with the intent or a scheme to discharge any resulting liability as suggested by the *Smith* case. *Smith,* 848 F.2d at 821. The debtor testified that it is his intention to fulfill the terms of the plan.

This court has considered under the totality of the circumstances the alleged nondischargeability of the Creditor's claim under chapter 7. The court discovers that this notion appears to conflict with the concept of a discharge in chapter 13 as set out in § 1328(a). One court discussed this anomaly by stating:

> This approach is not at cross-purposes with the admittedly liberal provisions of chapter 13, under which debts resulting from illegal acts such as embezzlement, fraud, and willful and malicious injury, ordinarily may be discharged. Rather, it ensures against manipulation of the statute by debtors who default on obligations grounded in dishonesty and who subsequently seek refuge in chapter 13 in order to avoid, at minimal cost, a nondischargeable debt.

*Neufeld,* 794 F.2d at 153 (4th Cir.1986) (cites omitted). The court is unable to find that the debtor's obligation was grounded in dishonesty and thus bad faith.

As a trial court, we are unable to overcome Congress' apparent choice not to except from discharge in chapter 13 debts that resulted from operating a motor vehicle while legally intoxicated or debts that stemmed from willful and malicious conduct of the debtor. The debtor's conduct, while egregious and perhaps even morally offensive, does not rise to the level of consensual or intentional conduct, as in those cases, *supra,* where bad faith has been found.

### Conclusion

As a result, the court does not believe that it is in a position to assume Congressional intent or to legislate. The court is unable to find debtor misconduct or abuse of chapter 13. Accordingly, the court finds that based on the totality of the circumstances, the debtor has filed his petition and proposed his chapter 13 plan in good faith. Therefore, the court DENIES the Creditor's Motion to Dismiss, and SUSTAINS the Creditor's Objection to Confirmation. The debtor is given until *September 28, 1989* to amend his Chapter 13 Statement and Plan to correct any discrepancies and to include the income and expenses of his non-debtor spouse.

SO ORDERED.